Ronald HESLOP, II, Respondent,

v.

Angeline SANDERSON, Appellant.

No. WD 62139.

Missouri Court of Appeals, Western District.

Oct. 21, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 2003.

As Modified Nov. 25, 2003.

Application for Transfer Denied Jan. 27, 2004.

J. Armin Rust, Lexington, MO, for Appellant.

Allen S. Russell, Jr., Kansas City, MO, for Respondent.

Before: BRECKENRIDGE, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Angeline V. Sanderson appeals from the judgment of the Circuit Court of Jackson County modifying the court's decree of dissolution of marriage by changing the primary physical custody of her son, Kyle McBride Heslop, from her to his father, Ronald Heslop, II, the respondent.

The appellant raises nine points on appeal. In Points I and II, she challenges the trial court's finding that her relocation with Kyle to Bakersfield, Missouri, without the consent of the respondent or a court order, was a change of circumstances warranting a change of custody from her to the respondent, in accordance with § 452.410.[1] In Points III–VI and IX, she claims error with respect to various evidentiary rulings of the trial court at the modification hearing concerning the respondent's felony conviction for driving while intoxicated. In Point VII, she challenges the sufficiency of the evidence to support the modification as being in Kyle's best interests, as provided in § 452.410. And, finally in Point VIII, she challenges the sufficiency of the evidence to support the trial court's finding that her removal of Kyle from public schooling, without consulting with the respondent and in violation of the custody decree, constituted a change in circumstances justifying the change in custody, under § 452.410.

We reverse and remand.

## Facts

The parties' marriage was dissolved on July 6, 1993, in the Circuit Court of Jackson County. The parties were awarded joint legal custody of their only child, Kyle, born January 21, 1992, with his primary physical custody being awarded to the appellant and specific visitation to the respondent. The respondent was ordered to pay child support of $150 per month, which was increased to $209 per month in January of 1997.

The appellant remarried and in 1997 moved to Warrensburg, in Johnson County, Missouri, where her spouse, John Sanderson, was an assistant principal at a local high school. When Kyle was ready to

---

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

begin the first grade in Warrensburg, the respondent wanted Kyle to go to public school, while the appellant wanted to home school him. Compromising, the parties agreed to send Kyle to Johnson County Christian Academy, with the respondent paying half of Kyle's tuition in first grade, and all of the tuition in the second grade. When the respondent refused to pay tuition for the third grade, the appellant started home schooling Kyle, without first obtaining the consent of the respondent, as agreed by the parties in their separation agreement and approved by the circuit court.

On January 7, 2002, the respondent filed a motion to modify the dissolution decree, seeking joint physical custody of Kyle in accordance with his proposed parenting plan, including requiring Kyle to attend a public or private school, rather than being home schooled by the appellant. Pursuant to the respondent's proposed parenting plan, the appellant was to retain primary physical custody of Kyle. In support of his motion, the respondent alleged, as substantial and continuing change in circumstances of Kyle and the appellant, five grounds: (1) the appellant's frequent refusal to allow the respondent to exercise his court-ordered visitation; (2) the appellant's refusal to provide any of the transportation for the respondent's visitation; (3) the appellant's unilateral decision to home school Kyle in violation of the parties' separation agreement; (4) the difficulty caused the respondent in exercising his visitation with Kyle due to the appellant's residence being located in Johnson County, Missouri; and (5) the appellant's failure to consult with the respondent with respect to major decisions affecting Kyle. On March 13, 2002, the appellant, *pro se*, filed an answer denying the allegations of the respondent's motion and asking the trial court to deny his motion.

On May 20, 2002, the trial court conducted a case status conference, at which the appellant informed the court of her intent to relocate with Kyle to Bakersfield, Missouri, due to her husband being offered a position of high school principal there, who at the time was the assistant principal at Warrensburg High School. The appellant was advised by the trial court that she was required to give notice by mail to the respondent of her intended relocation. Two days later, on May 22, 2002, the appellant sent a notice by certified letter to the respondent, advising him of her intended move.

On June 4, 2002, the respondent filed a motion to amend his motion to modify. On June 17, 2002, the trial court entered an order granting the respondent leave to file his amended pleadings. On June 28, 2002, the respondent filed an amended motion to modify, which was joined with a motion to prevent the appellant's proposed relocation with Kyle. In his amended motion to modify, the respondent sought primary physical custody of Kyle, alleging three additional changes in circumstances: (1) the appellant's announced intention to relocate, "which would have the effect of denying [the respondent] his court ordered parenting time with [Kyle]"; (2) the appellant's threatened relocation would interfere with the respondent's "involvement with [Kyle's] academic and social development and to participate in the daily activities of [Kyle]"; and (3) the appellant's threatened relocation would have the effect of removing Kyle "from his various extended family members in and around the greater Kansas City Metropolitan area."

On August 26, 2002, the respondent's motion was taken up and heard by Family Law Commissioner Sherill L. Rosen. The appellant appeared *pro se*. The respondent appeared in person and by counsel. Further evidence was heard on September

11, 2002, at which point the appellant was represented by counsel. On October 8, 2002, the commissioner made written findings and recommendations sustaining the respondent's motion to modify custody. On the same day, a judgment and order was entered by the circuit court, adopting the commissioner's findings and recommendations as the judgment of the court.

This appeal followed.

## Standard of Review

Our standard of review in a modification of custody is governed, as in other judge-tried cases, by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), interpreting what is now Rule 73.01(c). *Love v. Love*, 75 S.W.3d 747, 754 (Mo.App.2002). Under this standard, we will affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* Because the trial court is in the best position to weigh the evidence and render a judgment based on the evidence, the judgment is to be affirmed under any reasonable theory supported by the evidence. *Id.* When there is conflicting evidence, the trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting testimony, in whole or part. *Id.*

## Change of Circumstances

### I. Relocation

In Point I, the appellant claims that the trial court erred in modifying its prior custody decree by changing the primary physical custody of Kyle to the respondent on the basis that the appellant's relocation with Kyle to Bakersfield, Missouri, without the consent of the respondent or a court order, was a change of circumstance warranting such a modification under § 452.410 because pursuant to § 452.377, governing such relocations, the appellant

had an absolute legal right to relocate without the express consent of the respondent or a court order. She claims that she had a right to relocate without the express consent of the respondent or a court order in that the respondent failed to file, as required by § 452.377.7, a motion seeking an order to prevent the relocation within thirty days after receipt of the notice from the appellant of her intent to relocate.

Section 452.410 governs the modification of custody decrees. Under that statute, to modify a custody decree, the trial court must find "upon the basis of facts that have arisen since the prior decree ... that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." § 452.410.1. Thus, in a modification proceeding, the court's determination is two-fold: (1) was there a substantial change in circumstances; and, (2) if so, are the best interests of the child served by modifying custody? *Love*, 75 S.W.3d at 762.

Here, the trial court found essentially three changes in circumstances warranting a modification under § 452.410, including the appellant's relocation with Kyle to Bakersfield in violation of § 452.377, which governs the "relocation of children." Section 452.377.12 expressly provides that a violation of § 452.377 or a court order under that section "may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree." The appellant contends, however, that even if she had actually relocated to Bakersfield with Kyle as the trial court found, a fact she contests in Point II, she did not violate § 452.377 in relocating. We agree.

Section 452.377 reads, in pertinent part:

1. For purposes of this section and section 452.375, 'relocate' or 'relocation' means a change in the principal residence of a child for a period of ninety days or more, but does not include a temporary absence from the principal residence.

2. Notice of a proposed relocation of the residence of the child, or any party entitled to custody or visitation of the child, shall be given in writing by certified mail, return receipt requested, to any party with custody or visitation rights. Absent exigent circumstances as determined by a court with jurisdiction, written notice shall be provided at least sixty days in advance of the proposed relocation. The notice of the proposed relocation shall include the following information:

(1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;

(2) The home telephone number of the new residence, if known;

(3) The date of the intended move or proposed relocation;

(4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable; and

(5) A proposal for a revised schedule of custody or visitation with the child, if applicable.

. . .

7. The residence of the child may be relocated sixty days after providing notice, as required by this section, unless a parent files a motion seeking an order to prevent the relocation within thirty days after receipt of such notice. Such motion shall be accompanied by an affidavit setting forth the specific factual basis supporting a prohibition of the reloca-

tion. The person seeking relocation shall file a response to the motion within fourteen days, unless extended by the court for good cause, and include a counter-affidavit setting forth the facts in support of the relocation as well as a proposed revised parenting plan for the child.

In support of her contention that she did not violate § 452.377 in relocating to Bakersfield with Kyle, the appellant cites *Baxley v. Jarred,* 91 S.W.3d 192 (Mo.App. 2002). In *Baxley,* this court went into great detail outlining the requirements of § 452.377. The *Baxley* court recognized that the statute authorizes two separate modes or tracks for permitting a parent to relocate with a child: (1) non-court-ordered relocation where the non-relocating parent does not object to relocation in a timely fashion, as provided in § 452.377.7, and (2) court-ordered relocation where the non-relocating parent does object to relocation in a timely fashion. 91 S.W.3d at 199. Where the non-relocating parent waives any objection to relocation by failing to file a timely motion objecting to the relocation, the relocating parent has an absolute right to relocate with the parties' minor child, without the permission of either the court or the non-relocating parent. *Id.* at 204–06.

■ There is no dispute that on May 22, 2002, the appellant, in accordance with § 452.377, notified the respondent of her intent to relocate with Kyle to Bakersfield. Pursuant to § 452.377.7, the respondent had thirty days from the date of the notice, May 22, to file his motion to prevent the relocation. Thus, the motion would have been due on or before June 23, 2002, in that the thirtieth day, June 21, fell on a Saturday. *See* Rule 44.01.[2] The record

**2.** All rule references are to Missouri Rules of Civil Procedure, 2003, unless otherwise indi-

indicates that the respondent's motion to prevent the appellant's relocation, which was joined with his amended motion to modify, was not filed until June 28, 2002, rendering it out of time. However, the respondent argues that his June 4, 2002 motion for leave to amend, as provided in Rule 55.33(a), and the subsequent filing on June 28 of his combined amended motion to modify and motion to prevent the proposed relocation was sufficient to comply with the requirements of § 452.377.7. We disagree.

While the respondent was free to join his § 452.377.7 motion with his amended motion to modify custody, there was no legal requirement that he do so. The two, although related, in that the respondent was seeking to amend his motion to modify to include the appellant's alleged relocation in violation of § 452.377 as a ground for changing custody, the § 452.377.7 motion is a stand-alone motion that has its own statutory time table. Thus, while the respondent was required to obtain leave of court to file his amended motion to modify custody, he was not so required as to his § 452.377.7 motion. Section 452.377 mandated that he file his motion to prevent relocation within thirty days of receiving notice from the appellant of her intent to relocate. That time period could not be shortened, as a matter of due process. And, because the thirty days is a statutory time period, it could not be enlarged by the trial court pursuant to Rule 44.01(b). *Orange v. Harrington*, 649 S.W.2d 930, 933 (Mo.App.1983).

■ Although the respondent alleged, *inter alia*, in his "motion to amend pleadings" that because of the appellant's "announced intent to relocate, [he was] requesting that the court modify the child custody and parenting time provisions of the Judgment of Dissolution of Marriage beyond the relief requested in his original Motion to Modify, filed January 7, 2002," there was nothing in his motion that could be interpreted as his "seeking an order to prevent the relocation," as provided in § 452.377.7. And, although § 452.377.7 provides that the "motion shall be accompanied by an affidavit setting forth the specific factual basis supporting a prohibition of the relocation," the respondent's motion was signed by counsel alone and was not under oath, such that it could not be considered an affidavit. *See Stenzel v. State, Dep't of Revenue*, 536 S.W.2d 163, 169 (Mo.App.1976) (stating that "[a]n affidavit is a declaration on oath, in writing, sworn to by a party before some person who has authority to administer such oaths." (Citations omitted)). Moreover, even if the motion would have qualified as an affidavit, it does not set forth a "specific factual basis supporting a prohibition of the [appellant's] relocation," as required by § 452.377.7. Hence, the respondent's motion for leave to amend his motion to modify, although filed within thirty days after the appellant's notice concerning her proposed relocation, did not satisfy the requirements of § 452.377.7 such that the appellant was free to relocate with Kyle to Bakersfield without the consent of the respondent or a court order sixty days after May 22, the date of the notice, such that she was free to relocate after July 21. The record indicates that, if the appellant did, in fact, relocate, it occurred in the "last week" of July, which would encompass the time period of July 25–31. Thus, it is clear from the record that the appellant did not violate § 452.377 in relocating to Bakersfield and that she was free to do

cated. Rule 44.01(a) reads: "The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday."

so without the consent of the respondent or a court order such that the trial court erred in considering that as a change of circumstances warranting a modification of custody.[3] *Baxley*, 91 S.W.3d at 208–10.

■ Although the trial court erred in finding a change of circumstance based on the appellant's relocation to Bakersfield, the appellant is not entitled to a reversal of the court's decree modifying custody unless she can also demonstrate that the other grounds found by the trial court for a change of custody were insufficient to support a modification. This is so in that we are to affirm the judgment of the trial court on any ground supported by the record. *Bus. Men's Assurance Co. of Am.*, 984 S.W.2d 501, 506 (Mo. *banc* 1999). In that regard, as noted, *supra*, the trial court found a substantial and continuing change of circumstances warranting a change of custody for the appellant's violation of the prior custody decree by changing Kyle from public schooling to private schooling without the consent of the respondent in violation of the approved custody plan and her interference with the respondent's court-ordered visitation.

## II. Home Schooling

With respect to the appellant's unilateral decision to home school Kyle being a change of circumstances warranting a change in custody, the trial court found in its judgment entry:

> [the appellant] unilaterally removed the child from the private school, and began home schooling him . . . [The appellant] did not confer with [the respondent] regarding the education of their child.

This is [*sic*] contravention of the joint custody plan, as well as the portion of that plan which states that the child shall attend public school in the district of the parent with primary physical custody, unless the parties mutually agree to a different school. [The appellant] testified she doesn't interpret the agreement to require the child to attend public school. She denies that she unilaterally decided to home school the child.

As to a change of custody on this basis, the appellant claims in Point VIII that the trial court erred because "Sec. 452.375 2. [*sic*] RSMo prohibits the court from changing custody solely because a parent exercises her right to home school the child." The appellant contends that this statutory provision trumps the parties' agreement in their separation agreement, approved by the trial court, that Kyle "shall attend a public school in the district of the parent with primary physical custody unless the parties mutually agree to a different school." We disagree.

■ Section 452.375.2 provides that the trial court shall determine custody in accordance with the best interests of the child and in doing so, shall consider all relevant factors, including the eight factors set forth in the subsection. Immediately following the list of express factors to be considered, § 452.375.2 provides: "The fact that a parent sends his or her child or children to a home school, as defined in section 167.031, RSMo, shall not be the sole factor that a court considers in determining custody of such child or children." The appellant contends that we should interpret this provision as prohibiting a mod-

---

**3.** The respondent contends that the appellant cannot complain on appeal about the lack of a timely § 452.377.7 motion because she did not raise the issue below. This argument is without merit in that without a timely motion being filed, the issue of the relocation was never properly before the trial court in the first instance. *Baxley*, 91 S.W.3d at 206. Matters of subject matter jurisdiction can be raised at any time, including for the first time on appeal. Rule 55.27.

ification of custody based on a change of the child's education from public schooling to home schooling.

In interpreting a statute we are to determine the intent of the legislature, giving the language used its plain and ordinary meaning. *Baxley,* 91 S.W.3d at 196. If the intent of the legislature is clear and unambiguous, giving the language used its plain and ordinary meaning, then we do not resort to statutory construction. *Id.* In determining the legislature's intent, we are to read the statute as a whole and *in pari materia* with related sections. *Preston v. State,* 33 S.W.3d 574, 579 (Mo.App.2000).

An initial determination of child custody must be done in accordance with § 452.375, which requires, *inter alia,* that custody be determined in accordance with the best interests of the child. § 452.375.2. Unlike in an initial determination of custody case, in a modification proceeding, governed by § 452.410, before reaching the issue of best interests, the trial court must first find that there has been a substantial and continuing change in circumstances of the child or custodial parent. § 452.410.1; *Wood v. Wood,* 94 S.W.3d 397, 405 (Mo. App.2003). In making a best-interest determination for a change of custody, § 452.410 does not set forth what factors are to be considered. However, our appellate courts have determined that the best interests factors of § 452.375.2 are to be considered in modification proceedings, as well as in initial custody proceedings. *Wood,* 94 S.W.3d at 405. Hence, § 452.375.2, in the context of a modification proceeding, would appear to be implicated solely in the determination of best interests mandated by § 452.410.1, not for a determination of a change of circumstances.

The legislature is presumed to know the state of the law, *State v. Rous-*

*seau,* 34 S.W.3d 254, 261 (Mo.App.2000), such that in including the home schooling *caveat* in § 452.375.2, commonly referred to as the best interests subsection, it would appear at first blush that the legislature intended that its application be limited to that issue alone. Otherwise, one would reasonably have expected that it would have included a similar *caveat* in § 452.410 with respect to the trial court's determination of a change of circumstances, which it did not do. This expectation, however, would give rise to the illogical result that although home schooling could not be considered as the sole factor in determining whether a custodial arrangement was in the child's best interests, it could be considered as a change of circumstance to modify custody.

In reading two sections *in pari materia,* we must read them so as not to render an illogical or absurd result. *Preston,* 33 S.W.3d at 579. Honoring that maxim here, it would appear that the legislature in including the home schooling provision in § 452.375.2 did not intend for it to be limited to a best-interest determination in a modification of custody. This interpretation can be gleaned not only from the logic of the situation, but from the fact that the home-schooling provision speaks in terms of a determination of "custody" rather than a determination of best interests. § 452.375.2. Custody in the context of an initial determination would logically refer to the determination of best interests, while custody in the context of a modification would logically be all encompassing, including a determination of a change of circumstances, such that the home-schooling provision would apply to the best interests determination in an initial award of custody and a change of circumstances determination in a modification proceeding.

Given our interpretation of the home-schooling provision of § 452.375.2, it would have been error for the trial court here to have changed custody on the basis that the appellant switched Kyle from public schooling to home schooling. However, in reviewing the record, it is apparent that the trial court was not changing custody on that basis, but was doing so because she failed to obtain the consent of the respondent, as agreed by the parties in their separation agreement and as ordered by the trial court in its prior order of custody. In that regard, the parties agreed and the trial court ordered that: "The parties agree that the child shall attend a public school in the district of the parent with primary physical custody unless the parties mutually agree to a different school." There can be no dispute that the appellant was in violation of the court's decree by choosing to home school Kyle without first obtaining the consent of the respondent.

Accepting the fact that the appellant violated the trial court's custody decree in failing to obtain the respondent's consent to home school Kyle, the question arises as to whether this lone violation was a substantial change of circumstances warranting a modification. A change of circumstances sufficient to modify custody must be significant, not slight. *Reeves–Weible v. Reeves*, 995 S.W.2d 50, 57 (Mo. App.1999). Certainly, a pattern of ignoring the trial court's custody decree as to visitation, designed to promote the best interests of the child, could be viewed as a substantial change of circumstances warranting a modification. However, logically, not every violation of a custody decree should be viewed to be substantial *per se,* warranting a modification of custody. *Id.*

Ultimately we need not decide whether, in this case, it was error for the trial court to determine that the appellant's failure to obtain the respondent's consent to home

schooling, in violation of its custody decree, was a substantial change in circumstances. This is so in that, as explained *infra,* we are reversing the trial court's judgment of modification on the ground that the court's determination that the change in custody was in Kyle's best interests, was erroneous.

### III. Interference with Visitation

As a further basis for changing custody, the trial court found that the appellant had interfered with the respondent's visitation. "[A] custodial parent's interference with the visitation rights of the non-custodial parent can create a change in circumstances that may justify modification of custody. This is especially true where the evidence shows an unjustified and flagrant pattern of willful denial of visitation." *In re McIntire,* 33 S.W.3d 565, 570 (Mo.App. 2000). Because the appellant does not challenge the trial court's ruling that her interference with visitation constituted a substantial change in circumstances warranting a modification of custody, it must stand. This does not end our inquiry, however, in that the appellant, in Point VII, attacks the trial court's best interest determination, on which if she is successful, would warrant our reversal of the trial court's judgment changing custody to the respondent in that the court is not allowed to make a change unless the evidence supports a finding that it is in the child's best interests. § 452.410.

### IV. Best Interests

In Point VII, the appellant claims that the trial court erred in modifying the decree of dissolution to transfer primary physical custody of Kyle to the respondent because the trial court's determination that the modification was in the best interests of Kyle was against the weight of the evidence in that Kyle had been in the

appellant's custody since birth, was doing well, and expressed his strong preference to stay with the appellant.

In determining best interests in a proceeding to modify custody, the trial court is required to consider all relevant factors, including the eight factors set forth in § 452.375.2. *Wood,* 94 S.W.3d at 405; *Love,* 75 S.W.3d at 762–63. Those factors are:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

■ With respect to factors (1) and (2) of § 452.375.2, the trial court found that:

[The appellant's] parenting plan does not provide [the respondent] with frequent, continuing and meaningful contact with his son. In fact, there are long periods of time up to seven months when he would not see his child. [The appellant] said orally she might consider a weekend visitation a month, but that she would have to think about it. This is in contrast to [the respondent's] suggested plan, which would provide [the appellant] with such contact.

The problem with the trial court's findings as to the first two factors is that it compares plans prepared with two entirely different expectations. Whereas, the appellant's contemplated a permissible relocation to Bakersfield, the respondent's did not. Such a comparison is not appropriate and violates the directive of *Baxley* that factors associated with a permissible relocation under § 452.377 cannot be used to justify a change in custody. 91 S.W.3d at 208. Rather than change custody, the proper course of action is for the trial court to comply with the directives of § 452.377.10, ordering a change in the custody plan so as to allow continuing meaningful contact between the child and the non-relocating parent in light of the permissible relocation. *Baxley,* 91 S.W.3d at 210.

In addition to the trial court's findings as to factors (1) and (2) being tainted by the relocation issue being wrongly decided, so are its findings with respect to factors (3), (5) and (7). As to those factors, the trial court found: (1) with respect to factor (3), that Kyle "has no other relatives in the Bakersfield area; all of his relatives, including [the appellant's], live in and around

the Kansas City metropolitan area"; (2) with respect to factor (5), that Kyle "has no friends in Bakersfield, and has not met any children there"; and (3) with respect to factor (7), that "the relocation was not in good faith" and "places the child five and one half hours away from [the respondent], who was already having trouble with visitation when the child was one hour away.' " Inasmuch as these findings are a consequence of the appellant's permissible relocation to Bakersfield, they cannot be used as a basis for changing custody. *Id.*

Inasmuch as factor (6), the "mental and physical health of all individuals involved," was not relevant, and factor (8), the "wishes of a child as to the child's custodian," was found in favor of the appellant, the court finding that Kyle "wants to live with [the appellant]," that only leaves factor (4) as a basis for finding that it was in Kyle's best interests to change custody from the appellant to the respondent.

As to factor (4), "[w]hich parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent," the trial court found:

> There have been a number of occasions when [the appellant] has denied [the respondent] visitation with his child. She has even made comments that he was lucky to get the visitation he received. Her parenting plan provides him with little or no contact with the child for long periods of time. [The respondent's] plan provides [the appellant] with frequent, continuing, and meaningful contact. The Court finds that [the respondent] is the parent more likely to allow the child frequent, continuing, and meaningful contact with the other parent.

Again, with respect to the comparison of parenting plans, as noted, *supra*, that is not a fair comparison under the circumstances of this case. Thus, the trial court's

best interests determination favoring a change of custody to the respondent hinged on its finding that the respondent had experienced "ongoing problems with visitation."

▅▅ With respect to visitation problems, the trial court found:

> Since [the relocation the respondent] has been required to provide all transportation regarding visitation; [the appellant] refused to provide any transportation. At times, when [the respondent] went to Warrensburg to pick up the child, no one would be there. At other times, [the appellant] would tell [the respondent] that they were trading weekends, and if he disagreed, he did not get his visitation.
>
> For Christmas, 2001, [the appellant] told [the respondent] they were going to Jamaica, and offered to let [the respondent] have Thanksgiving instead. While [the respondent] did not agree, he felt he was not given a choice. [The appellant], her family, and the parties' child were gone from after Thanksgiving until after Christmas, causing [the appellant] to miss his weekend, as well as holiday visitation. [The appellant] testified that if she hadn't given him the Thanksgiving holiday, he wouldn't have seen the child at all.
>
> [The appellant] also denied [the respondent] visitation on Memorial Day weekend in 2001, Easter, and 4th of July. She would also make [the respondent] return the child to many different places, including Lone Jack, Odessa, Grain Valley, Holden, and Whiteman Air Force base.

With respect to the trial court's findings concerning incidents of no one being there when the respondent went to pick up Kyle in Warrensburg for visitation, of trading weekends, and of returning Kyle from visitation to different places, the record does

not provide any specifics, just very broad and general testimony from the respondent that made no attempt to quantify. In that regard, the respondent testified on direct:

Q. Tell me just in general terms, and then we'll talk more specific, what sort of problems were you having with regard to your visitation?

A. Just picking him up on the scheduled parenting time—

Q. What sort of problems would you experience?

A. The changing of weekends without, you know, asking if it was all right, or—

Q. Who was changing the weekends?

A. Ms. Sanderson.

Q. How would that occur?

A. They would not be there sometimes. They would be—you know, be other places.

Q. Okay.

A. Or she would just call—or have Kyle call and just say that they were—you know, this—this weekend's not going to work, they were going to change weekends.

Q. Okay. Was there advanced [sic] consultation with you to see if you could agree to an alternate weekend?

A. Very rarely. No.

Q. Okay. On a percentage basis, how often would she consult with you before that would happen?

A. Well, it was almost never a consulting. It was more of a this-is-how-it's-going-to-be type—

[THE APPELLANT]: Objection. This is purely speculation.

COMMISSIONER ROSEN: Overruled.

[THE APPELLANT]: He has no date.

Q. You can answer.

A. What was the question?

Q. The problems that you were having with visitation, the—how that transpired.

A. Just—He—A lot of times he wouldn't be where he was supposed to be. I drove around for several hours several times looking for him.

From this testimony, it would be very difficult to determine what significance to attach to the appellant's behavior with respect to the trial court's consideration of factor (4) of § 452.375.2 in its best interests determination. On the whole, it appears that viewing the evidence in a light most favorable to the trial court's decision, at most, the record would support the fact that over a period of nine years, the respondent had been denied visitation on four specific holidays, all occurring in one year, and the appellant had on an indeterminate number of occasions not been cooperative in effectuating the respondent's visitations.

We recognize that in matters of child custody we are to pay deference to the trial court. *Cutting v. Cutting*, 39 S.W.3d 540, 542 (Mo.App.2001). However, where, as here, the record, when viewed favorably to the trial court's ruling, does *not support the court's findings on which its custody ruling is predicated, we must reverse.* On balance, we fail to see how the visitation problems outlined in the trial court's findings would outweigh the fact that the appellant had been the primary physical custodian of the child for nine years; the child was well adjusted and showed proper development, both mentally, physically and emotionally; and the child was bonded to his mother and desired to remain with her. Our courts recognize that there is much value in allowing children to remain with the custodial parent, rather than uprooting them. *Reeves–Weible*, 995 S.W.2d at 56. What is obvious from the record is that the trial court's best interests determination favor-

ing modification was driven by its change-of-circumstances finding that the appellant's relocation was in violation of § 452.377. Removing relocation and its implications, we find very little support in the record for the court's finding that it was in Kyle's best interests to change his primary physical custody to the respondent. Essentially, removing relocation as an issue, the case factually would be in the same posture that it was before the respondent amended his original motion, in which he was not seeking to modify primary physical custody. As we noted, *supra,* although the trial court's concerns surrounding the appellant's relocation could not be addressed by modifying custody, they could be adequately addressed pursuant to § 452.377.10.

It was the respondent's burden to show that it was in Kyle's best interests to change his primary physical custody. § 452.410; *Reeves–Weible,* 995 S.W.2d at 56. He failed to carry that burden when the issue of relocation is removed from the case. Hence, the trial court erred in changing the primary physical custody of Kyle from the appellant to the respondent as being in his best interests.

### Conclusion

The judgment of the Circuit Court of Jackson County modifying its decree of dissolution by changing primary physical custody of Kyle McBride Heslop from the appellant to the respondent is reversed, and the case is remanded to the court for the sole purpose of allowing it to comply with the directives of § 452.377.10, as interpreted by this court in *Baxley.* 91 S.W.3d at 206.

BRECKENRIDGE, P.J., and HOWARD, J., concur.