**Samuel W. SCRUGGS, Respondent,**

v.

**Cynthia D. SCRUGGS, Appellant.**

**No. WD 62773.**

Missouri Court of Appeals, Western District.

April 19, 2005.

Rehearing Denied May 31, 2005.

Debra Lynn Moore, Independence, MO, for Appellant.

Regina Keelan Bass, Kansas City, MO, for Respondent.

Before EDWIN H. SMITH, C.J., ELLIS and HOWARD, JJ.

EDWIN H. SMITH, Chief Judge.

Cynthia Scruggs appeals the judgment of the Circuit Court of Jackson County dissolving her marriage to the respondent, Samuel Scruggs, with respect to its orders: (1) emancipating the parties' minor child, Melissa Scruggs; (2) denying the appellant's request for maintenance; and (3) dividing the marital property of the parties.

In Point I, the appellant claims that the trial court erred in declaring that the parties' minor child, Melissa, was emancipated because that issue was not before the court to decide, and even if it had been, the record did not support the court's declaration. In Points II, III, and IV, she claims that the trial court erred in denying her request for maintenance. In Point V, she claims that the trial court erred "in not awarding [her] equity in the [marital] home" because in awarding the home to the respondent, the trial court failed to consider her economic circumstances, as required by § 452.330.1(3).[1]

We affirm in part, and reverse and remand in part.

## Facts

The parties were married on May 1, 1984, in Crestwood, Missouri, and separated on March 14, 2001. Four children were born of the marriage: Melissa Scruggs, born October 20, 1985; Justin Scruggs, born January 20, 1987; Michael Scruggs, born June 19, 1989; and Theresa Scruggs, born February 3, 1992.

On April 3, 2001, the respondent filed a petition for dissolution of marriage in the Circuit Court of Jackson County. The appellant filed her answer and cross-petition on May 17, 2001. Both parties sought joint legal and sole physical custody of the

---

1. All statutory references are to RSMo 2000,     unless otherwise indicated.

children, and the appellant sought maintenance from the respondent.

On June 26–27, 2002, the respondent's petition and the appellant's cross-petition were taken up and heard. Other than the parties, the only witnesses to testify were Peggy Riggs and Stephanie Fama, former neighbors of the parties, who testified on behalf of the respondent.

On the issue of custody, the appellant's evidence was that three of the parties' four children suffered from physical, emotional, or mental disabilities. Specifically, there was evidence that Justin suffered from Asperger's Syndrome, a behavioral disorder similar to autism. Neither party presented any evidence as to Melissa being emancipated.

On the issue of maintenance, the respondent adduced evidence that the appellant held several college degrees and was fully capable of supporting herself. The appellant's evidence was that, although she had degrees in both Spanish and French, she had not utilized them during the marriage such that she was now only capable of obtaining minimum wage jobs.

At the close of all the evidence, the trial court took the case under advisement. On August 9, 2002, the court entered a temporary custody order. On December 20, 2002, the parties again appeared before the court. As to the purpose of this hearing, the trial court stated:

> Okay. The Court has before it Cause No. 01FC203296. This is a review. The Court entered a temporary judgment, took the matter under advisement. We've had the trial on all issues, and essentially the court set the matter over for an update this morning from the Guardian ad Litem on how the children—children are doing since I entered my temporary order on—let me find my signature page—August 9th.

At the hearing, the children's guardian *ad litem*, David Kimminau, made an oral report as to the progress of the parties' minor children since the temporary order of custody was entered. In giving his report, Kimminau was not sworn as a witness. The parties did not present any evidence at the hearing.

On February 7, 2003, the trial court entered its judgment of dissolution. In its judgment, the court found that the parties' oldest child, Melissa, was emancipated, and awarded the respondent "sole legal" custody of the three remaining children, with "joint physical custody" being awarded to the parties. The appellant was named the primary residential custodian of Justin, with the respondent being named the primary residential custodian of Michael and Theresa. The respondent was ordered to pay the appellant child support of $390 per month. In its **Form 14** calculation of child support, the trial court found that the appellant had gross monthly income of $1,650 per month, a portion of which was imputed. The trial court denied the appellant's request for maintenance, set off to the parties their separate property, and divided their marital property. On March 24, 2003, the trial court entered an amended judgment, which divided certain items of marital property left out of the court's initial judgment.

This appeal followed.

## I.

In Point I, the appellant claims that the trial court erred in declaring that the parties' minor child, Melissa, was emancipated because that issue was not before the court to decide, and even if it had been, the record did not support the court's declaration. While we disagree that the issue was not before the court, we agree that it was not supported by the evidence.

The trial court's judgment declaring a minor child to be emancipated will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declares or applies the law. *Randolph v. Randolph*, 8 S.W.3d 160, 162 (Mo. App.1999). In our review, we are to defer to the trial court's determinations of credibility, viewing the evidence in the light most favorable to the court's judgment and disregarding all contrary evidence and inferences. *Id.* at 162–63.

### A. Was the issue of emancipation properly before the trial court for determination?

The appellant claims that the issue of emancipation was not before the trial court for its determination in that neither party asked the court to determine whether Melissa was emancipated. In support of her claim, the appellant cites *In re Marriage of Heddy*, 535 S.W.2d 276 (Mo. App.1976). Our reading of *Heddy* discloses that not only does it not support the appellant's position, but that it implicitly supports the exact opposite.

In *Heddy*, as in this case, the trial court declared, *sua sponte*, in its dissolution judgment, that one of the parties' minor children had been emancipated. *Id.* at 278. The mother appealed, claiming that the court erred in finding that the child in question was emancipated, and the appellate court reversed. *Id.* at 278–79. Unlike here, however, the mother in *Heddy* did not challenge whether it was proper for the trial court to rule, *sua sponte*, on the child's emancipation. Rather, she attacked the court's declaration of emancipation as not being supported by the record. However, in reviewing mother's claim on the merits and determining that the record was insufficient to support the trial court's declaration of emancipation, the appellate

court implicitly recognized that the issue was before the court, despite not being expressly raised by the parties. *See Brock v. Blackwood*, 143 S.W.3d 47, 55 (Mo.App. 2004) (explaining that an appellate court has a duty to determine its jurisdiction, *sua sponte*, and, if the trial court lacked jurisdiction to enter the ruling it did, the appellate court necessarily lacks jurisdiction to review the trial court's ruling on the merits).

We cannot find any cases that directly discuss the issue of whether emancipation is before the trial court in every dissolution proceeding in determining its custody and child support orders, even though not raised by the parties. However, we believe, in reading and interpreting the statutes and cases concerning initial custody and child support determinations in dissolution proceedings, that it is.

Section 452.375 governs initial child custody determinations in dissolution proceedings. It provides, in pertinent part, that the "court *shall* determine custody in accordance with the best interests of the child." § 452.375.2 (emphasis added). However, neither that section, nor any other section in the "Dissolution of Marriage Act," §§ 452.075–.425, defines "child" for purposes of an initial custody determination, under § 452.375.2. In addition, § 452.445, "Definitions," and § 452.450, "Jurisdiction," of the Uniform Child Custody Jurisdiction Act (UCCJA), §§ 452.440–.550, do not define "child." Likewise, § 452.340, dealing with initial child support awards in dissolution proceedings, in authorizing such awards, does not define "child." Section 452.340.3 does, however, provide for when the "obligation of a parent to make child support payments shall terminate." Neither § 452.375, with respect to custody awards, nor § 452.340, with respect to child support awards,

speaks expressly to the issue of emancipation in a dissolution proceeding.

Section 452.310, governing, *inter alia*, the contents of a petition for dissolution of marriage, makes numerous references to "children" and a "child" of the parties, without defining the terms. However, § 452.310.7, dealing with parenting plans, does provide, in pertinent part, that: "The proposed parenting plan shall set forth the arrangements that the party believes to be in the best interest of the *minor* children...." (Emphasis added.) This would indicate, what we reasonably would assume in any event, that the requirement of § 452.375.2, that the trial court is to determine initial custody in a dissolution proceeding, is limited to minor children. And, in fact, in *B.W. v. F.E.W.*, 562 S.W.2d 137, 139 (Mo.App.1978), the court construed that particular provision of § 452.375 as a "direction to make an award of custody of *all minor children* in dissolution cases." (Emphasis added.) Similarly, in *Miner v. Miner*, 669 S.W.2d 628, 629 (Mo.App.1984), citing *B.W. v. F.E.W.*, the court recognized that "it is mandatory for the trial court in a dissolution case ... to provide for the custody of a minor dependent child." *See also Rich v. Rich*, 871 S.W.2d 618, 624 (Mo.App.1994). These cases, however, do not define a minor or minor dependent child.

In *Biermann v. Biermann*, 657 S.W.2d 65, 66–67 (Mo.App.1983), the court addressed the issue of the age of majority for purposes of child support. The appellant contended that the trial court erred in declaring that the age of majority for purposes of child support was 21, not 18. The appellant argued that, although Chapter 452 did not set the age of majority at age 18, the "legislative change in Chapter 475—Guardianship reduced the age of majority to eighteen and ... the same age should control under Chapter 452—Disso-

lution of Marriage." *Id.* at 66. The court, recognizing that "[t]here is no statutory definition of minor children in Chapter 452," rejected the appellant's argument and held that the common law applied such that the "age of majority for child support remain[ed] the date of emancipation or age twenty-one." *Id.* at 67.

As we discuss, *supra*, Chapter 452 still does not expressly define what constitutes the age of majority for purposes of an initial order of support or custody in a dissolution proceeding. However, in 1988, § 452.340 was amended to include § 452.340.3, governing when the obligation of a parent to make child support payments terminates. In that regard, it provides, *inter alia*, that the obligation terminates when the child reaches age 18, unless § 452.340.4 or 452.340.5 applies. In addition, it provides that the obligation terminates when the child: dies; marries; enters active duty in the military; or becomes self-supporting, with consent. § 452.340.3. While these circumstances of termination are not expressly referred to in § 452.340.3 as constituting emancipation, as this court recognized in *Dowell v. Dowell*, 73 S.W.3d 709, 713 (Mo.App.2002), "[m]any of [the common law] concepts [of emancipation] were incorporated into the child support provisions of the Dissolution of Marriage Act, Chapter 452, with the Legislative amendment of § 452.340 in 1988, and further amendments in subsequent years," citing, specifically, the provisions of § 452.340.3.

Under the common law, emancipation is defined as "the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it." *Randolph*, 8 S.W.3d at 164; *Heddy*, 535

S.W.2d at 279. Emancipation can be accomplished in one of three ways: (1) by express parental consent; (2) by implied parental consent; or (3) by a change of the child's status in the eyes of society. *Randolph*, 8 S.W.3d at 164. The third method is usually shown by the child entering the military or marriage; however, it can also be shown when a child, who is able to care for his or herself, voluntarily chooses to leave the parental home and attempts to "fight the battle of life on [his or her] own account." *Id.*

At first blush, it is curious that subsection 3 would be included in § 452.340, dealing with initial child support orders, in that by its terms subsection 3 appears to speak to the termination of existing obligations to make child support payments. This fact was noted by this court in *Randolph*, 8 S.W.3d at 163. In *Randolph*, this court determined that § 452.340.3 did not apply to an initial order of custody in a dissolution proceeding because it expressly speaks of terminating an existing obligation to make child support payments. *Id.* Dismissing the application of that subsection, the *Randolph* court determined that the common law of emancipation should apply. While we cannot fault the court's analysis, as far as it went, we believe that in interpreting § 452.340.3 as only applying to an existing obligation to make child support payments, the court failed to consider the bigger picture.

In interpreting statutes, we are to determine the intent of the legislature, giving the language used its plain and ordinary meaning. *Heslop v. Sanderson*, 123 S.W.3d 214, 222 (Mo.App.2003). If the intent of the legislature is clear and unambiguous, giving the language used its plain and ordinary meaning, then we do not resort to statutory construction. *Id.* In determining legislative intent, we are to read the statute as a whole and in *pari materia* with related sections. *Id.*

While § 452.340.3 does speak in terms of terminating an existing obligation to pay child support payments, suggesting that it does not apply to initial orders of child support in dissolution proceedings, it appears to us that the legislature intended that it would apply, nonetheless. In reading § 452.340 in its entirety, it is clear that it deals, *inter alia*, with initial orders of child support in dissolution proceedings, while § 452.370 deals with modification of such orders. The delineation of the circumstances of emancipation in § 452.340.3, dealing with initial orders of child support, rather than in § 452.370, dealing with modification of support orders, suggests that the legislature intended that § 452.340.3 apply to initial orders of child support in dissolution proceedings.

Further support for the proposition that § 452.340.3 applies to initial orders of child support can be found in the fact that it would be totally illogical to suggest that a child support obligation could be imposed, without any regard for the emancipation provisions of § 452.340.3, which obligation would then terminate immediately if one or more of the circumstances of § 452.340.3 was found. The legislature is presumed not to intend an absurd result. *David Ranken, Jr. Technical Inst. v. Boykins*, 816 S.W.2d 189, 192 (Mo. *banc* 1991) (overruled on other grounds in *Alumax Foils, Inc. v. City of St. Louis*, 939 S.W.2d 907 (Mo. *banc* 1997)). It makes more sense to find that if one or more of the emancipation provisions of § 452.340.3 applied, no order should be entered in the first instance such that this section would apply not only to terminate an existing obligation to make child support payments, but to preclude the entry of an initial order

of support.[2]

Having determined that emancipation or age of majority, for purposes of child support, is now age 18, not 21, unless the exceptions of §§ 452.340.4 or 452.340.5 apply, the question remains as to whether the age of majority is also 18 for purposes of child custody, under § 452.375.

As we noted, *supra*, § 452.375 does not define a "child" for purposes of that section, but case law has made it clear that a child for purposes of custody orders, under § 452.375, is a "minor dependent child." *Miner v. Miner*, 669 S.W.2d at 629 (citing *B.W. v. F.E.W.*, 562 S.W.2d at 139). This, of course, does not help in determining the age of majority for purposes of custody. Logically, however, one would be led to believe that the age of majority for purposes of custody should be the same age of majority for purposes of child support. This is so in that custody and child support orders in dissolution proceedings are interdependent—one cannot exist without the other. *Monsees v. Monsees*, 908 S.W.2d 812, 815 (Mo.App.1995); *Rich*, 871 S.W.2d at 625. The legislature is presumed to know the existing case law when it enacts a statute. *Cook v. Newman*, 142 S.W.3d 880, 888 (Mo.App.2004). Thus, in enacting § 452.340.3, incorporating the provisions of common law emancipation for purposes of child support, we must presume that the legislature intended for those provisions to not only apply to initial support orders in dissolution proceedings and modifications, but to initial custody orders in dissolution proceedings, under § 452.375, as well as modifications of those orders, under § 452.410, such that the age of majority for purposes of custody would be the same as for support.

Given the foregoing discussion concerning the age of majority for custody and support orders, and the law of emancipation, the trial court, in determining whether to enter initial custody and support orders in a dissolution proceeding, must necessarily determine the issue of emancipation, whether the issue is expressly raised by the parties or not. Hence, contrary to the appellant's claim, the issue of emancipation was properly before the trial court for determination. The question then becomes whether the record was insufficient for the court to find that Melissa was emancipated, as the appellant claims.

**B. Does the record support the trial court's finding that Melissa was emancipated for purposes of custody and support?**

As noted, *supra*, emancipation has been defined as "the freeing of a child for all the period of its minority from the care, custody, control, and service of its

---

**2.** Of course, logically the emancipation provisions of § 452.340.3 should apply to § 452.370 inasmuch as emancipation is a basis for modification of a child support order. In that regard, § 452.370.4 provides:

> Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by *emancipation* of the child. The parent entitled to receive child support shall have the duty to notify the parent obligated to pay support of the child's emancipation and failing to do so, the parent entitled to receive child support shall be liable to the parent obligated to pay support

for child support paid following emancipation of a minor child, plus interest.

(Emphasis added.) This section does not specify what constitutes emancipation, as does § 452.340.3. However, it would be totally illogical to suggest that the legislature intended that the circumstances of emancipation for purposes of modification of child support orders would be different than those for purposes of entering initial orders of child support. Hence, it appears that the legislature intended that in determining emancipation for purposes of § 452.370, the emancipation provisions of § 452.340.3 would apply.

parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it." *Randolph,* 8 S.W.3d at 164. "Emancipation is never presumed, and the burden is upon the party asserting it to show facts proving the emancipation." *Id.* And, as we determined, *supra,* pursuant to § 452.340.3, a child reaches the age of majority for purposes of child custody and support at age 18, unless § 452.340.4 or 452.340.5 applies. In. addition, § 452.340.3 provides that a child is emancipated if he marries; enters active duty in the military; or becomes self-supporting, provided that his parents have relinquished parental control by express or implied consent. With respect to being self supporting, a parent is under no obligation to support a child "who is physically and mentally able to take care of his or herself, has voluntarily abandoned the parental roof and turned his back to its protection and influence, and has gone out to fight the battle of life on his own account[.]" *Brosius v. Barker,* 154 Mo.App. 657, 136 S.W. 18, 20 (1911).

The trial court declared Melissa to be emancipated because she was "employed full time, is beyond parental control and lives with her boyfriend[.]" On appeal, the respondent concedes that he did not present any evidence to support the court's declaration of emancipation, but nonetheless contends that there is evidence in the record to support it. In that regard, he points to the unsworn oral report of David Kimminau, Melissa's guardian *ad litem.*

As noted in the facts, on December 20, 2002, approximately five months after trial, the parties again appeared before the trial court. At the hearing, the guardian *ad litem,* David Kimminau, without being sworn as a witness, updated the court as to the progress of the parties' minor children. In that regard, Kimminau advised the court that:

> You placed Melissa in the primary physical custody of Sam after the last hearing, and so she hasn't gotten any better. In fact, this would seem to indicate that she has regressed as opposed to either maintaining whatever level we had before or—or improving. She was living outside the home for a while with boyfriend and boyfriend's parents, away from Mr. Scruggs or—or her mother. I think there's a complete independence on her part where neither parent has any particular control when it comes to her. She's going to do what she wants when she wants and how she wants, and that's been evident even before any temporary orders or prior orders were entered by you, and that seems to be continuing to this point.

Initially, the question arises as to whether Kimminau's report to the trial court was competent evidence such that the court could have considered it in making its determination that Melissa was emancipated. The record reveals that Kimminau was not sworn as a witness and was not subject to cross-examination by the appellant. As such, his report did not constitute evidence on which the trial court could rely in declaring that Melissa was emancipated. *Dickerson v. Dickerson,* 55 S.W.3d 867, 875 (Mo.App.2001).

Even if Kimminau's report to the trial court could have been considered by it in declaring that Melissa was emancipated, the evidence was still insufficient to support its declaration. As we discuss, *supra,* in order to establish emancipation by demonstrating that the child is self-supporting, there must be evidence that the appellant and the respondent relinquished parental control by express or implied consent. § 452.340.3(4). There is nothing in the record from which the trial court could

reasonably infer that Mellissa's parents had consented, either expressly or impliedly, to relinquish parental control over her. Hence, in declaring that Melissa was emancipated and not subject to its custody and support orders, the trial court committed reversible error.

## II.

In Points II–IV, the appellant claims that the trial court erred in denying her request for maintenance, based on its finding that she failed to meet the threshold test for an award of maintenance, under § 452.335.1, because the weight of the evidence presented at trial supported a contrary determination. Specifically, in Point II she claims that:

> The trial court erred when it declined to award maintenance to [her], because RSMo. 452.335 states that the party seeking maintenance may be awarded maintenance if she lacks sufficient property, in addition to being unable to support herself through appropriate employment, and the weight of the evidence showed that [she] was not awarded sufficient property to meet her reasonable needs in that she was only awarded $75,000 of a retirement account that she could not touch for over 15 years and no other property, and her reasonable needs were calculated to be over $3,000 a month.

In Point III, she claims that:

> The trial court erred when it declined to award maintenance to [her], because RSMo. 452.335 states that the trial court may award maintenance if the party seeking maintenance is unable to support herself through appropriate employment, in addition to lacking sufficient property, and the weight of the evidence showed that [she] is unable to support herself through appropriate employment in that she never worked out-

side the home in a professional, career capacity during the course of the marriage, has never utilized her dual degrees, has no special training or expertise, and was only making $7.00 an hour at the time of the dissolution.

And, in Point IV, she claims that:

> The trial court erred in not awarding [her] maintenance because RSMo. 452.335 states that maintenance may be awarded if the party seeking maintenance is the custodian of a child whose condition makes it appropriate that [he or she] not seek employment outside the home, as is the case with [her] in that she was awarded custody of Justin Scruggs, who has been diagnosed with a little-known behavior disorder similar to autism.

In Point II, the appellant is attacking the trial court's finding that she has sufficient property to provide for her reasonable needs; while in Point III, she is attacking the court's finding that she is able to support herself through appropriate employment. Her attack in Point IV is an extension of her attack in Point III. In Point IV, she is simply arguing the trial court's failure to consider a factor to be considered in determining whether she could support herself through appropriate employment.

Section 452.335.1 sets forth a two-part threshold test for determining the propriety of an award of maintenance. *McIntosh v. McIntosh*, 41 S.W.3d 60, 67 (Mo.App.2001). It reads:

> 1. In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to

either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

§ 452.335.1. Hence, "maintenance can [only] be awarded to a spouse who: (1) lacks sufficient property to provide for his or her reasonable needs; *and* (2) is unable to support him or herself through appropriate employment[,]" taking into consideration the possibility that a spouse's ability to work may be limited due to unique custodial arrangements. *Greiner v. Greiner*, 146 S.W.3d 442, 448 (Mo.App.2004) (emphasis added). Thus, the party seeking maintenance has the burden of establishing both statutory threshold requirements. *Comninellis v. Comninellis*, 147 S.W.3d 102, 106 (Mo.App.2004).

Here, the trial court determined that the appellant failed to carry her burden as to both prongs of the threshold test, under § 452.335.1, specifically finding that "[b]oth parties are capable of supporting themselves [through appropriate employment] and both parties have sufficient property to support themselves." Inasmuch as both prongs must be met before the trial court may entertain an award of maintenance, if the record supports the fact that: (1) the appellant has sufficient property to provide for her reasonable needs; or, (2) she can support herself through appropriate employment, taking into consideration the fact that she is Justin's primary physical custodian, we must affirm the trial court's denial of maintenance. *Comninellis*, 147 S.W.3d at 106.

In determining the correctness of a trial court's ruling on a request for maintenance, the appellate court must defer to the trial court's maintenance determination unless it is improper under the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), or is an abuse of discretion. *Hammer v. Hammer*, 139 S.W.3d 239, 240 (Mo.App.2004). In its review, the appellate court views the evidence in the light most favorable to the court's determination and disregarding all contrary evidence and inferences. *Id.*

In claiming in Points II, III and IV that the weight of the evidence supported a finding by the trial court that she satisfied both prongs of the threshold test for an award of maintenance, the appellant misunderstands our standard of review. Under the *Murphy v. Carron* standard, we are to affirm the trial court's determination that a party seeking maintenance failed to meet the threshold test for an award of maintenance, unless we find it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Hammer*, 139 S.W.3d at 240. Under that standard, even if we were to find, as the appellant claims, that the weight of the evidence supported a determination that she met the threshold for an award of maintenance, she would not be entitled to the appellate relief she seeks. *Herigon v. Herigon*, 121 S.W.3d 562, 567 (Mo.App.2003); *Dorman v. Dorman*, 91 S.W.3d 167, 169 (Mo.App.2002). As this court explained in both *Dorman* and *Herigon:*

> The *Murphy v. Carron* standard ... does not stand for the proposition that if 'substantial evidence' and the 'weight of the evidence' could support an alternative judgment the judgment must be reversed. Instead, only when the judgment rendered is not supported by 'sub-

stantial evidence' or is 'against the weight of the evidence' must the judgment be reversed. 91 S.W.3d at 169, 121 S.W.3d at 567. Hence, we need not review to determine whether the appellant is correct that the weight of the evidence supports a determination by the trial court that she had met the threshold test for an award of maintenance.

█ Even assuming, *arguendo,* that the appellant misspoke in claiming as she did, and what she intended to claim was that the trial court's denial of maintenance was against the weight of the evidence, her claim would still fail. As we noted, *supra,* the appellant had the burden of showing both prongs of the threshold test for maintenance: (1) that she lacks sufficient property to provide for her reasonable needs; and, (2) that she is unable to support herself through appropriate employment. Hence, if she failed in her burden as to either the property prong or the employment prong of the threshold test, we would be required to affirm the trial court's denial of the appellant's request for maintenance.

"Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron,* 536 S.W.2d at 32. Given the evidence and all the reasonable inferences adduced from it, we cannot say that the trial court's determination that the appellant failed to meet the threshold test for an award of maintenance, based on its finding that she was able to support herself through appropriate employment, was wrong.

In claiming that the trial court erred in finding that she had not carried her burden of showing that she is unable to support herself through appropriate employment, the appellant attacks the court's finding that she had gross monthly income of $1,650, or $19,800 annually, as indicated in the court's Form 14 child support calculation, which indicated that the amount included imputed income. She contends that the record does not justify an imputation of income, in any amount, and that the only evidence in the record as to her ability to support herself is the evidence that she earned $7.00 per hour as a part-time employee of the Gap.

In determining the reasonableness of a trial court's findings with respect to maintenance, appellate courts often look to the court's Form 14 child support calculations. *Evans v. Evans,* 45 S.W.3d 523, 531 (Mo. App.2001). By not challenging the imputation of income in the trial court's Form 14 child support calculations, any claim of error as to the imputation of income for purposes of maintenance is waived. *Id.; Schroeder v. Schroeder,* 924 S.W.2d 22, 27 (Mo.App.1996). The appellant does not attack the trial court's Form 14 child support calculation as to her gross monthly income, which included imputed income. Hence, she cannot challenge the trial court's imputation of income for purposes of determining whether she was capable of supporting herself through appropriate employment. *Schroeder,* 924 S.W.2d at 27. As such, we find no merit in the appellant's claim that the record did not support the trial court's determination that she could support herself through appropriate employment. Hence, we must affirm the trial court's judgment denying the appellant's request for maintenance.

Point denied.

### III.

█ In Point V, the appellant claims that the trial court erred "in not awarding [her] equity in the [marital] home" because

in awarding the home to the respondent, the trial court failed to consider her economic circumstances as required by § 452.330.1(1). Specifically, she claims that she "was clearly in dire need of an award of property that she could use and consume now, not in the future. Her income and expenses necessitated this."

A reviewing court must defer to the trial court's marital property division unless it is improper under the standard of *Murphy v. Carron*, 536 S.W.2d at 32, or is an abuse of discretion. *Conrad v. Conrad*, 76 S.W.3d 305, 314 (Mo.App.2002). Appellate courts presume the division of property was correctly decided, and the party challenging the division bears the burden of overcoming that presumption. *Id.*

Section 452.330, which governs the division of property in a dissolution proceeding, sets forth a two-step process that is to be followed by the trial court: (1) the court must first set aside to each spouse his or her non-marital property; and (2) then divide the marital property and debts in such proportions as the court deems just. *Bauer v. Bauer*, 38 S.W.3d 449, 458 (Mo. App.2001). Section 452.330.1 provides, in pertinent part, that in dividing the parties' marital property, the trial court is required to consider all relevant factors, including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

The five statutory factors of § 452.330.1 are not exclusive, and there is no formula determining the weight to be given to the factors in dividing the marital property. *Taylor v. Taylor*, 25 S.W.3d 634, 640 (Mo. App.2000).

The division of marital property need not be equal, but must be fair and equitable given the circumstances of the case. *Shepard v. Shepard*, 47 S.W.3d 412, 417 (Mo.App.2001). The fact that one party is awarded a higher percentage of marital assets does not *per se* constitute trial court error. *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo.App.2000) (quoting *Klockow v. Klockow*, 979 S.W.2d 482, 487 (Mo.App. 1998)). In fact, this court routinely affirms highly disproportionate divisions of marital property. *Id.*

Here, the parties' marital property consisted of two main assets: (1) the family home, valued at $165,500, with a debt of $79,016, resulting in $86,484 in equity; and (2) the respondent's 401K plan, valued at $100,143. In addition, the parties owned two vehicles of near equal value, $2,709 in cash, and numerous household goods. Besides the debt on the home, the parties had additional marital debts, totaling $47,309.

In making its division, the trial court awarded the respondent the family home, along with the debt thereon; $25,143 of his 401K plan; one of the vehicles; $1,429.50 in cash; and approximately half of the household goods. The appellant was awarded the rest. As to the parties' marital debt, other than the debt on the home, $27,309 was ordered paid by the respondent, with the appellant being ordered to pay the balance of $20,000 in debt.

An award of marital property "cannot be considered deficient for its failure to announce that it was made in accordance with the statutory factors." *Taylor*, 25 S.W.3d at 640 (*quoting Starrett v. Starrett*, 703 S.W.2d 544, 548 (Mo.App.1985)). There is a presumption that the trial court considered all the factors of § 452.330 in making its property division and that its award was correct. *Lance v. Lance*, 979 S.W.2d 245, 249 (Mo.App.1998).

The sum and substance of the appellant's argument in Point V is:

Appellant should have been awarded property that she could use for her daily living expenses now, not when she is 59½. Half of the equity in the home would have been a good start. That, coupled with substantial maintenance, and Appellant would not be enduring the hardships she is today. But the trial court did not do this. It gave her property that she cannot touch for another 16 years. And that is really about it, aside from enormous debts. This is a clear abuse of discretion and should not stand.

The appellant does not cite any authority that supports her claim and does not fully develop her argument. *Eagle ex rel. Estate of Eagle v. Redmond*, 80 S.W.3d 920, 926 (Mo.App.2002). Hence, she fails to rebut the presumption that the trial court, in dividing the marital property, considered all the factors of § 452.330, including factor (1), the economic circumstances of the parties, and that its division was correct.

Point denied.

## Conclusion

The circuit court's judgment of dissolution is affirmed in all respects, except its order declaring that Melissa was emancipated, which we reverse and remand to the court with directions to amend its child custody and support orders to include Melissa, including hearing additional evidence on that issue, if it deems it necessary.

ELLIS and HOWARD, JJ, concur.