**Theresa WILKINS, Appellant,**

v.

**James K. WILKINS, Respondent.**

**No. ED 92092.**

Missouri Court of Appeals, Eastern District.

Dec. 22, 2009.

Mary Ann Weems, Clayton, MO, for appellant.

Mary E. Davidson, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Theresa Wilkins ("Mother") appeals the judgment of the Circuit Court of St. Louis County emancipating Jimmy Wilkins ("Child") and awarding James Wilkins ("Father") $9,676 in overpaid child support. Specifically, Mother asserts that the motion court erred in ruling: (1) that Father's duty to pay child support for Child terminated on November 30, 2006, and (2) that Father was entitled to a reimbursement for child support voluntarily paid by him. We reverse.

### Background

The trial court dissolved the marriage of the parties by judgment entered June 5, 2003. The dissolution judgment awarded Mother primary legal and physical custody of Child and ordered Father to pay Mother $624 in monthly child support. The trial court first issued an income withholding order on August 1, 2003. Child graduated from high school in June 2005. On June 20, 2005, Father filed his first motion to terminate child support. In her answer, Mother notified Father that Child was going to attend Vatterott Technical College ("Vatterott") in Fall 2005. The trial court dismissed Father's motion.

Child attended Vatterott's sixty-week Heating, Air–Conditioning, and Refrigeration Mechanics ("HVAC") diploma program from October 10, 2005, until he received his HVAC diploma on November 30, 2006, a period of 60 weeks. Vatterott is a vocational institution that does not follow a traditional semester format. Rather, Vatterott divides its school year into 10–week "phases" and holds classes year round. Vatterott does not have any breaks or summer vacation. Each "phase" begins immediately after the preceding "phase." Child did not register for the phase beginning December 4, 2006. Child completed a new enrollment agreement for Vatterott on February 12, 2007, for the HVAC associate degree program. On September 6, 2007, after completing an additional thirty weeks of instruction, Child received his HVAC associate's degree.

On September 24, 2007, Father filed his second motion to terminate child support. In his affidavit to terminate child support, Father alleged that: (1) Child failed to provide a transcript or similar college document at the beginning of each semester, and (2) Child completed the HVAC diploma program on November 30, 2006, and failed to re-enroll. Father further claimed that Mother concealed Child's completion of the diploma program, "entitling [Father] to a refund of all child support from 11/30/06." Mother's answer challenged Father's motion by alleging "[Child] was

enrolled at Vatterott College and he resumed his classes on February 12, 2007."

Commissioner Phillip Jones held a hearing on Father's motion on April 21, 2008. At the hearing, Father testified about his communications with Mother regarding Child's education. Father stated that he did not receive any information regarding Child's attendance at Vatterott from Mother, but spoke with Child about it. He acknowledged receiving from Mother's attorney two letters dated October 16, 2006, and May 21, 2007, enclosing Vatterott records. However, Father never contacted Vatterott or Mother to obtain Child's Vatterott records. Finally, Father conceded that he did not contribute financially to Child's Vatterott tuition.

At the hearing, Mother testified as to her communications with Father about Child's attendance at Vatterott and financing of Child's Vatterott tuition. Mother asserted that she notified Father in her answer to his motion to terminate that Child was enrolling in Vatterott. She denied having a phone number or address for Father despite his address being included in his 2005 motion to terminate child support. Mother did not send Father any records about Child's completion of the HVAC diploma program on November 30, 2006. Mother stated that her attorney sent Father a third letter with Vatterott records to Father on June 18, 2007. Finally, Mother testified that during Child's ten-week break, he had to secure financing and loans to complete the HVAC associate's degree program. According to Mother, she and Child are responsible for several loans obtained to finance Vatterott's tuition.

The motion court entered its judgment at the conclusion of the hearing, finding that Child was emancipated on November 30, 2006 on the grounds that: (1) Child did not re-enroll for the next phase upon completing the HVAC diploma program and (2) Child failed to comply with the reporting requirements of § 452.340.5 as required for a child to remain eligible for parental support. In addition, the motion court concluded Father was entitled to a reimbursement of $9,676 in overpaid child support following Child's emancipation. Mother appeals.

### Standard of Review

■ Our review of a motion court's judgment is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment of the motion court unless "there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares the law or applies the law." *Rogers v. Rogers*, 87 S.W.3d 368, 371 (Mo.App. W.D. 2002). In reviewing a motion court's judgment declaring a child emancipated, we must defer to the motion court's determinations of credibility. *Scruggs v. Scruggs*, 161 S.W.3d 383, 388 (Mo.App. W.D.2005). Further, we must view "the evidence and permissible inferences in the light most favorable to the [motion] court's decision, and disregard all contrary evidence and inferences." *Kasten v. Frenz*, 109 S.W.3d 210, 212 (Mo.App. E.D.2003).

### Discussion

■ In her first point on appeal, Mother asserts that the motion court erred in finding that Child was emancipated on November 30, 2006 and that Father's duty to pay child support subsequently terminated. Specifically, Mother contends that Child was not emancipated upon his receipt of his HVAC diploma on November 30, 2006. Rather, Mother argues that Child was continuously enrolled in Vatterott until he completed the HVAC associate's degree program, despite taking a ten-week break. Conversely, Father claims that Child was

emancipated on November 30, 2006, because: (1) he failed to continuously attend school as required by § 452.340.5 and (2) he does not qualify for a waiver of the continuous attendance requirement.

The party asserting emancipation has the burden of showing facts that prove emancipation. *Randolph v. Randolph,* 8 S.W.3d 160, 164 (Mo.App. W.D. 1999) (citing *Ragan v. Ragan,* 931 S.W.2d 888, 890 (Mo.App. S.D.1996)). Missouri courts define emancipation as the "freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it." *Id.* "Emancipation can be accomplished in one of three ways: (1) by express parental consent; (2) by implied parental consent; or (3) by a change in the child's status in the eyes of society." *Scruggs,* 161 S.W.3d at 390 (citing *Randolph,* 8 S.W.3d at 164). The third method of emancipation can be established if the child enters the military, marries, or voluntarily chooses to leave the parental home and is able to care for his or herself. *Scruggs,* 161 S.W.3d at 390.

Under Section 452.340.5, Missouri courts will not deem a child emancipated if the child is continuously enrolled in "an institution of vocational or higher education by the October following graduation from secondary school and if certain requirements are met." Mo.Rev.Stat. § 452.340.5 (2000); *Draper v. Draper,* 982 S.W.2d 289, 294 (Mo.App. W.D.1998); *Peine v. Peine,* 200 S.W.3d 567, 572 (Mo. App. W.D.2006) (quoting *Ricklefs v. Ricklefs,* 111 S.W.3d 541, 544 (Mo.App. W.D.2003)). A child is continuously enrolled "so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester ... and achieves grades sufficient to reenroll at such institution." Mo.Rev.Stat. § 452.340.5; *see also Pickens v. Brown,* 147 S.W.3d 89, 92 (Mo.App. W.D.2004) (citing *Smith v. White,* 114 S.W.3d 407, 421 (Mo.App. W.D.2003)). In accordance with Missouri public policy of encouraging children to pursue higher education, courts liberally construe the continuous enrollment requirement of § 452.340.5. *Harris v. Williams,* 72 S.W.3d 621, 624 (Mo.App. E.D.2002) (citing *Draper,* 982 S.W.2d at 294).

We first consider whether the record supports a finding that Father established that Child failed to continuously attend Vatterott as required by § 452.340.5. Specifically, Father claimed that Child failed to continuously attend Vatterott because he took a ten-week break between the HVAC diploma program and the HVAC associate's degree program.

Vatterott does not use a semester format and students are afforded no breaks or summer vacation. Rather, the school employs ten-week phases. Here, the record reflects that the Child completed sixty weeks of instruction and then took a ten-week break before starting a new "phase." Although § 452.340.5 does not explicitly address vocational settings that do not employ traditional semester breaks, the statute clearly contemplates a reasonable semester-long break from post-secondary schooling. Certainly, the statute does not expressly or impliedly require a post-secondary vocational student to attend school for over a year without a break or to attend his vocational program until age twenty-one with no break in order to maintain continuous enrollment.[1] Indeed, giv-

---

1. Under § 452.340, when a child is continuously enrolled in an institution of vocational or higher education, "the parental support obligation shall continue until the child com-

en the obvious intent of the legislature to treat vocational and college education equally, we discern no basis for imposing additional burdens on a child simply because he attends a vocational school rather than a traditional college. Mindful of our obligation to liberally construe the continuous enrollment requirement of § 452.340.5, we conclude that, under the circumstances here, Father did not meet his burden of demonstrating emancipation based on a failure to comply with the continuous enrollment requirement of § 452.340.5.

Second, we consider Mother's alternative argument that even if the child was not continuously enrolled within the meaning of § 452.340.5, he qualifies for a waiver of the continuous attendance requirement. In response, Father contends that: (1) "[t]here was no evidence that [Child] had a clear intent to re-enroll" and (2) Mother did not "demonstrate manifest circumstances justifying [Child's] failure to attend his school's next term."

█ If a child fails to attend post-secondary institution continuously, a court may nevertheless decline to find the child emancipated if: "(1) the interruption from the enrollment is temporary; (2) there is an evident intent to re-enroll; and (3) there are manifest circumstances which prevented continuous enrollment." *Harris*, 72 S.W.3d at 624. Manifest circumstances are situations beyond a child's control, such as "illness, physical disability, financial difficulty, or a parent's nonpayment of child support." *Meuschke v. Jones*, 134 S.W.3d 783, 788 (Mo.App. W.D. 2004) (citing *Kasten*, 109 S.W.3d at 213). This court will consider financial difficulty beyond the child's control if the child lacked alternative means of funding or if the child explored reasonable alternatives.

*Griffith v. Griffith*, 163 S.W.3d 464, 467 (Mo.App. W.D.2005).

In *Harris v. Williams*, 72 S.W.3d 621 (Mo.App. E.D.2002), this court found that financial difficulties justified waiver of the continuous enrollment requirement. In *Harris*, the child withdrew from Vatterott and enlisted in the Missouri National Guard to obtain tuition assistance. *Id.* He returned to a local community college after completing a six-month training course with the National Guard. *Id.* We found that "the factors contributing to Child's withdrawal from school and enlistment in the National Guard were external and beyond his control." *Id.* at 625.

Here, there is nothing in the record to support a finding other than that Child's interruption of enrollment at Vatterott was temporary. Both parties agree that the interruption in enrollment lasted ten weeks, a significantly shorter period than the six-month interruption in *Harris*. *See also Kasten v. Frenz*, 109 S.W.3d 210, 214 (Mo.App. E.D.2003) (seventeen-week interruption in college enrollment to attend military training deemed temporary). Further, like the child in *Harris*, Child re-enrolled in Vatterott at his first opportunity. Moreover, Child demonstrated his intent to re-enroll by seeking financing and loans for the associate's degree program during the ten-week break.

Child's financial difficulty also qualifies as "manifest circumstances." Mother and Child took out several loans to finance Child's education, while Father did not contribute to Child's Vatterott tuition. The motion court expressly found that Mother's income was approximately $9,000 in 2006 and $8,000 in 2007 while Father's income was $83,000 in 2007. The record is

pletes his or her education, or until the child reaches the age of twenty-one, whichever first

occurs."

devoid of any evidence suggesting the Child had alternative means of funding his Vatterott education or that he failed to explore reasonable alternatives. Point granted.

■ In her second point on appeal, Mother contends that the motion court erred in finding that Father was entitled to a refund for voluntarily-paid child support based on Child's failure to comply with the reporting requirements of § 452.340.5. Specifically, Mother asserts that Father is not entitled to reimbursement because: (1) Child's failure to comply with reporting requirements does not result in emancipation and (2) Father's child support payments were voluntary. In response, Father claims that he paid the child support involuntarily through income assignment, and therefore is entitled to reimbursement.

We first consider whether the record supports a finding that Father established that Child's failure to comply with reporting requirements entitled Father to a refund of child support monies paid. The record supports a finding that Child failed to comply with reporting requirements. However, unless a child is emancipated, § 452.340 does not support a refund of monies already paid. *See Jansen v. Westrich,* 95 S.W.3d 214, 220 (Mo.App. S.D. 2003). Here, we have found that the record does not support a finding of emancipation because of a lack of continuous enrollment. Likewise, non-compliance with the notice requirements of § 452.340(5) does not result in emancipation. *Rogers,* 87 S.W.3d at 372–73.

We next consider whether the record supports a finding that Father was entitled to a refund because he involuntarily paid child support during the period Child failed to comply with the § 452.340.5 reporting requirements. In general, overpayments of child support are presumed

voluntary. *Carey v. Carey,* 84 S.W.3d 469, 473 (Mo.App. E.D.2002). Specifically, if a child does not comply with § 452.340.5's reporting requirements, a child support obligor's payments during the relevant time period constitute a voluntary overpayment and are not refundable. *Peine,* 200 S.W.3d at 575; *Jansen,* 95 S.W.3d at 220. Notwithstanding a presumption of voluntariness, Father contends that his payments were involuntary because he was subject to an income withholding order at the time of the dissolution in 2003. Father cited no cases to support this proposition in his brief but referenced *McFadden v. McFadden,* 200 S.W.3d 594 (Mo.App. W.D. 2006), during oral argument.

In *McFadden,* father's wages were withheld *because* he refused to pay child support for the period in question, i.e., mother in *McFadden* initiated an involuntary withholding of father's income in response to his failure to pay child support. *Id.* at 596. Here, the trial court ordered income withholding at the time of dissolution. Unlike in *McFadden,* at no point prior to institution of withholding did Father object or refuse to pay child support for the period in question. Indeed, Father failed to challenge the income withholding order until September 24, 2007, after his son's graduation from the Vatterott associate's degree program. Under these circumstances, Father fails to overcome the presumption of voluntariness. Point granted.

### Conclusion

We reverse the judgment of the motion court and remand for proceedings consistent with this opinion.

SHERRI B. SULLIVAN, P.J., and ROBERT G. DOWD, JR., J., Concur.