Philip M. Hess, Chief Judge
Introduction
T.S.I. (“Mother”), appeals from the judgment of the. Circuit Court of Marion County in favor of A.L.(C.)B. (“Father”) denying her motion to modify visitation. Mother argues two points of error: 1) the trial court’s judgment was not supported by substantial evidence and was against the weight of the evidence, and 2) the trial court’s order that- Mother pay Father $1000 in attorney’s fees was not supported by substantial evidence and was against the weight of the evidence. We affirm.
Factual and Procedural Background
Mother and Father had a child together (“Child”). Child was born in February 2005. Father established paternity of Child in February 2006 via a “Judgment and Decree Declaring Father-Child Relationship” (the “2006 Judgment”). The 2006 Judgment awarded joint legal and physical custody of Child. In October 2008, a trial court entered a modification of the 2006 Judgment (the “Modification Judgment”), awarding Father sole legal and physical custody of Child. The Modification Judgment ordered, in relevant part:
• Child’s primary residence would be with Father,
• Every other weekend, Child would be with Mofher from Friday at 6:00 p.m. until Sunday at 6:00 p.m.
• One evening, every other week, Child be with Mother from 4:00 p.m. until 8:00 p,m.
• During summer vacation, Mother and Father each could designate two consecutive weeks for the child to be in their respective custody;
*319 The Modification Judgment also incorporated the 2006 Judgment’s holiday visitation schedule, which awarded each parent roughly equal time with Child during specified holidays. The Modification judgment ordered Mother to pay Father $707.00 per month for child support.
In January 2015, Mother filed a motion to modify and a motion for contempt. In her motion to modify, Mother requested additional visitation time with Child and a modification of her child support obligations. Mother alleged four grounds for why modifying Child’s visitation was in the best interests of Child:
1. Child was three years old when the Modification Judgment was entered and would soon be ten years old. Mother and Child wanted to spend more time with each other.
2. Child has developed a close relationship with Mother’s husband (“Stepfather”) and their relationship would be enhanced by Child being allowed to spend more time with Mother.
3. Father refused to cooperate with Mother concerning her request for additional visitation with Child, and has been inflexible concerning Mother’s visitation.
4. Father does not promote a strong and healthy relationship between Child and Mother.
In her motion for contempt, Mother alleged that Father consistently interfered with her selection of her two-week visitation period during summer vacation. She requested compensatory visitation time at least equal to the time she lost because of Father’s interference and for Father to pay her attorney’s fees related to pursing her motion. Father moved to dismiss or deny both of Mother’s motions.
A trial on Mother’s motions was held in December 2015. Mother testified that she was seeking to have visitation with the Child for 166 to 167 overnight periods, up from the 62 overnights she had. Mother testified that over the seven years since the 2006 Judgment, Father had denied her visitation with Child multiple times. Specifically, she lost four hours of her visitation with Child on the 4**1 of July, an hour of visitation on a Father’s day, and 90 minutes of visitation when Child’s school bus broke down. When asked by Father’s attorney whether some problems with visitation could be cured if the trial court would clarify the procedure for requesting summer visitation, she answered “absolutely not ... I want more time with [Child].”
Mother testified that Child told her on nineteen occasions he wanted to spend more time with her. During cross-examination, she admitted she had initiated the conversation on nine occasions. Mother testified that she would talk to Child about how she was sad they did not get to spend more time together, and she admitted that she knew' it made Child sad to know she was upset. Mother also testified that she told Child she was saving money to go back to court in order to get more time with him. Mother complained that Father would not call her back when she would call to speak with Child. On cross-examination, Mother stated there had been five occasions where she had not received a return phone call, and that she had no record of Father not returning a call since 2012.
Child testified that he got along with Mother and Father, and each of their spouses. He testified that he would like to spend more time with Mother. He testified that when he saw Mother was sad about not being able see him more, it made him sad. Child testified he wanted to see how it would feel for Father to experience what Mother was going through. Child testified that he and Mother talked approximately *320 once per month about her wanting to spend more time with him. He testified that he knew the precise number of nights he spent with Mother per year. He stated that he had calculated the number himself. On cross-examination, although he recited the precise number of nights he spent per year with mother, he could not explain how he was able to calculate the number. It was revealed that Child had learning disabilities and was behind in math. Child also testified that he met with Mother’s attorney on at least one occasion.
Father testified that due to Child’s learning disabilities, he has an Individual Education Plan (“IEP”). The IEP emphasizes the importance of consistency and routine in Child’s life, and Father tries to follow the IEP’s guidance. Father expressed concern that the additional visitation requested by Mother would cause Child to fall behind in school. Father testified there were a few times when Child did not complete his homework while in Mother’s care. Father also testified that on several occasions Child got in trouble at school for bad behavior on Thursdays following his Wednesday visitations with Mother.
Father testified that he was concerned about contact between Child and his older half-brother, Jade.[1] Jade was incarcerated and had convictions for theft and drug offenses. Father testified that Jade had taken Child to the St. Louis Zoo once and gotten lost, and had also taken him fishing. Father testified that Mother knew he did not think Jade was a good influence on Child.
Father testified there was confusion regarding which parent got to choose first for summer vacation and whether holidays had priority over the regular or summer visitation schedules. Father opined that it would be helpful for the trial court to clarify the rules for visitation.
On January 4, 2016, the trial court denied Mother’s motion to modify visitation, finding it was not in the best interest of the child. The Court instead clarified the procedure for Mother and Father to follow when designating the two-week visitation periods in the summer. The trial court also ordered Mother to pay Father $1,000 for partial attorney fees. This appeal follows. Additional facts will be discussed where relevant to Mother’s points on appeal.
Standard of Review
We will affirm the judgment in a court-tried case unless there is no substantial evidence to support it; it is against the weight of the evidence; it erroneously declares the law; or it erroneously applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Substantial evidence means “competent evidence from which the trial court could reasonably decide the case.” Bauer v. Bauer, 38 S.W.3d 449, 455 (Mo. App. W.D. 2001).
We defer to the trial court’s superior ability to assess the credibility of witnesses and view all facts and reasonable inferences in a light most favorable to its decision. Dunkle v. Dunkle, 158 S.W.3d 823, 832-33 (Mo. App. E.D. 2005). The trial court “is in the best position to judge the credibility of the parties, their sincerity, character, and other intangibles which may not be revealed by the record.” Ream-Nelson v. Nelson, 333 S.W.3d 22, 26 (Mo. App. W.D. 2010) (internal citations omitted). Regarding visitation issues, “the trial court has broad discretion, and we give even greater deference to these decisions than in other civil cases.” Dunkle, 158 S.W.3d at 833. We do not reweigh the evidence, even if the evidence could have *321 supported another conclusion. See St. Lawrence v. St. Lawrence, 109 S.W.3d 225, 226 (Mo. App. E.D. 2003).
Discussion
Mother argues two points of error: 1) the trial court’s judgment denying Mother’s motion to modify was not supported by substantial evidence and was against the weight of the evidence, and 2) the trial court’s order that Mother pay Father $1000 in attorney’s fees was not supported by substantial evidence and was against the weight of the evidence. Father contends that both of Mother’s points are without merit because the trial court’s judgment on both issues was supported by substantial evidence and was not against the weight of the evidence.
I. Point I
In her first point, Mother argues that the trial court erred in determining that increased visitation with Child was not in the Child’s best interests. Mother asserts that the evidence, when viewed in the context of the statutory factors listed in § 452.375.2 RSMo,[2] supports her argument. Section 453.375 applies primarily to custody determinations. Mother is seeking to modify visitation, which is governed by § 452.400. However, “[a]s with custody, the principal factor to be considered in an award of visitation is the best interest of the child.” Hankins v. Hankins, 920 S.W.2d 182, 187 (Mo. App. W.D. 1996). Section 452.400 does not set forth factors for courts to consider when awarding or modifying visitation. However, case law indicates the factors listed in § 452.375.2 can be considered when determining a child’s best interests under § 452.400. See, e.g., Peniston v. Peniston, 161 S.W.3d 428, 432 (Mo. App. W.D. 2005).[3]
Section 453.375.2 lists eight nonexclusive factors for courts to consider when determining whether custody is in the best interests of a child:
1) The wishes of the child’s parents as to custody and the proposed parenting plan submitted by both parties;
2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child’s, best interests;
4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
5) The child’s adjustment to the child’s home, school, and community;
6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved ...
*322 7) The intention of either parent to relocate the principal residence of the child; and
8) The wishes of a child as to the child’s custodian ....
In its judgment, the trial court did not provide the reasoning behind its best interest determination, and did not address the § 452.875.2 factors.[4] However, because this is a visitation case, and not a custody case, the written findings requirement in § 452.375.6 does not apply. Compare § 452.400.1(4) (requiring the court to make specific findings of fact only when requested by a party, and only to show that the visitation arrangements made by the court best protects the child or parent if either is a victim of domestic violence) with § 452.375.6 (contains an explicit requirement for written findings of fact and conclusions of law in custody cases where the parties have not reached an agreement on all issues related to custody); see Madison v. Madison, 27 S.W.3d 853, 855 (Mo. App. E.D. 2000). Our review of the record demonstrates there was substantial evidence to support the trial court’s determination that Mother’s proposed visitation modification was not in Child’s best interest. The factors listed in § 453.375.2 do not weigh conclusively in Mother’s favor.
Regarding factor one, both parties agreed that Father should continue to have sole physical and legal custody of child.
Regarding factor two, both parents testified that they were willing to actively perform their functions as mother and father. Although Child testified that he wanted to spend more time with Mother, evidence was adduced that Mother often told Child how sad she was that Child did not get to spend more time with her. Mother admitted that she knew telling Child how sad she was made him sad as well.
Regarding factor three, evidence was adduced that Child had a good relationship with both his biological parents and stepparents. However, Father was concerned that Child was allowed to spend time alone with his half-brother Jade during his visitation with Mother, as Jade had been convicted of multiple crimes and been to prison. Father testified that he was concerned that Jade was a negative influence on Child, and recalled that Jade had once taken Child to the zoo and gotten lost.
Regarding factor four, Mother argues that Father repeatedly interfered with her contact with Child. Specifically, she argues that Father failed to return phone calls and meddled with her summer visitation. However, Mother’s own records and testimony demonstrated there were only five occasions where she called Father to speak with Child and not get a call back. From 2012 until trial, Mother had no record of Father or Child not returning a call. Father testified, and the trial court was free to believe, that Father’s alleged interference with Mother’s summer visitation was due to confusion over ambiguities in the visitation schedule and was not done with bad intent. The record demonstrates that during seven years, Mother lost around eight hours of scheduled visitation due to confusion or unusual circumstances. Evidence was also adduced that Mother suggested to Child he do “fun things” such as enroll in karate class or other sports when Child was not in Mother’s care. Father testified that Mother made him look like the “bad guy” when he would have to tell *323 Child he could not participate in those activities.
Regarding factor five, evidence was adduced that Child’s behavior worsened at school on days following his visitation with Mother. Child’s IEP stressed the importance of routine and consistency in Child’s life, which could reasonably indicate that granting further visitation with Mother would not be helpful for Child’s studies. There was also evidence adduced that Child did not complete his homework when he was with Mother.
Factors six and seven did not weigh in favor of either party because there was no testimony adduced regarding them.
Factor eight is not applicable to the present case as Mother did not seek to modify Father’s status as the sole legal and physical custodian of Child.
Mother cites to Amedei v. Amedei, 801 S.W.2d 491 (Mo. App. W.D.1990), in which the Western District upheld a trial court’s grant of a father’s motion to modify visitation. The Western District determined that the trial court “could have” found, based on the evidence, that the mother, who was the sole custodian on the parties’ child, exhibited a rigid and inflexible approach to interpreting the visitation provisions of the original decree. Id. at 493. The Western District noted that courts “may consider” whether a party interfered with the visitation rights of another party when determining the best interests of the child. See id. at 493-94. Here, the trial court did not find that Father’s alleged interference with Mother’s visitation rights was serious enough to warrant a modification of the visitation schedule. Mother is asking us to reweigh the evidence. Appellate courts “do not reweigh the evidence, even if the evidence could have supported another conclusion.” Dunkle, 158 S.W.3d at 833.
Considering the totality of the evidence, and viewing it in the light most favorable to the trial court’s judgment, we cannot say that the trial court’s best interest determination was against the weight of the evidence. The trial court could have reasonably determined that Mother was interfering with Father’s relationship with Child, that Mother was unfairly burdening Child with her complaints she did not have enough time with him, and that Child’s education would be better advanced by continuing the current visitation schedule. There was substantial evidence in the record to support the trial court’s judgment. Mother’s first point is denied.
II. Point II
In Mother’s second point on appeal, she argues that the trial court erred in awarding $1,000 to Father in attorney’s fees[5] because she “partially prevailed.” Mother argues she prevailed because she persuaded the trial court to clarify ambiguities in the visitation schedule with Child. Father contends that Mother’s argument is disingenuous because Mother opposed the clarifying language later used by the trial court in its judgment.
We will reverse a trial court’s award of fees only when the award is an abuse of discretion. Stirling v. Maxwell, 45 S.W.3d 914, 916 (Mo. App. W.D. 2001). Section 452.355 governs the award of attorney’s fees. It states that a court may award attorney’s fees “after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action.”
*324 Mother cites to Corley v. Corley, 128 S.W.3d 521, 527 (Mo. App. W.D. 2003) to support her argument that because she partially prevailed a trial, the trial court abused its discretion when it awarded attorney’s fees to Father. In Corley, the Court held that when neither party prevails “on their main issue,” attorney’s fees should not be awarded to either party. Id.
However, we agree with Father that the record demonstrates that Father prevailed and Mother did not “partially prevail.” Mother opposed the clarifications to the visitation schedule the trial court made in its judgment. During her cross-examination Mother testified:
[Father’s Attorney]: Could some of [the visitation problems] be cured if there was just more language in the order about the mechanism for, you know, when you’re to give him notice and when he’s to tell you—give you his dates: Wouldn’t that be a lot easier if the Court would just clarify this for you?
[Mother]: Absolutely not.
[Father’s Attorney]: So if the Court would say you can—you should give your two weeks that you want, these thirty—-at least thirty days before you want it to give it to him in writing?
[Mother]: No.
[Father’s Attorney]. Why would that not help?
[Mother]: Because I want more time with my son.”
Father, not Mother, requested the trial court clarify the summer visitation schedule. Mother’s claim she partially prevailed on her claim is meritless. Mother’s motion to modify visitation was denied by the trial court. Because Mother’s argument she partially prevailed is meritless, and she is not challenging the award of attorney’s fees on other grounds, we deny her point.
Conclusion
The judgment of the trial court is affirmed.
Lawrence E. Mooney, J. and Colleen Dolan, J. concur.

. Jade is Mother’s biological son.

. All statutory references are to RSMo, (Supp. 2013), unless otherwise indicated.

. Mother also argues we should retroactively apply our holding in Morgan v. Morgan, 497 S.W.3d 359, 366 (Mo. App. E.D. 2016), where we held that a modification of an order of visitation rights did not require demonstrating a change in circumstances. However, the holding in Morgan was not new law. See, e.g., Russell v. Russell, 210 S.W.3d 191, 193 (Mo. banc 2007) ("Visitation rights ... could be modified simply by showing that the modification was in the best interest of the child”). We agree with Mother that she was not required to demonstrate a change in circumstances between Child and Father for the purposes of modifying Mother’s visitation rights.

. Mother conceded at oral argument that she did not request findings of fact pursuant to Rule 73.01(c).

. The award of attorney’s fees was a partial award. Father testified at trial he incurred $6,230 in attorney’s fees and had only been able to pay $3,300 of those fees due to personal financial problems.