

# In the Missouri Court of Appeals
# Eastern District
## DIVISION FOUR

| | | |
|---|---|---|
| DONNA LYNN (TATE) LIBRACH, | ) | No. ED106684 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Sandra Farragut-Hemphill |
| STANLEY L. LIBRACH, | ) | |
| | ) | |
| Respondent. | ) | FILED: May 14, 2019 |

## Introduction

Donna Lynn (Tate) Librach ("Mother") appeals from the trial court's 2018 judgment (the "2018 Final Judgment") awarding joint physical and legal custody of youngest child ("A.L.") to Mother and Stanley L. Librach ("Father"), emancipating and eliminating child support for oldest child ("J.L."), awarding Father make-up visitation for A.L., and denying Mother's request for attorneys' fees. On appeal, Mother raises three points. In Point One, Mother alleges that the trial court erred in sua sponte statutorily emancipating J.L. and reducing child support to only one child. In Point Two, Mother asserts that the parenting plan is against the weight of the evidence because the trial court did not give proper weight to the recommendations of the guardian ad litem (the "GAL"), and the trial court plainly erred by not allowing the children to testify. In Point Three, Mother claims that the trial court abused its discretion when it denied her motion for attorneys' fees.

1

The record before us lacks sufficient evidence regarding J.L.'s education to support the trial court's finding of emancipation. However, the record demonstrates that the parenting plan entered by the trial court was not against the weight of the evidence, and that the trial court did not abuse its discretion in denying Mother's request for attorneys' fees. Accordingly, we affirm in part and reverse and remand in part for the trial court to modify Father's obligation for child support consistent with this opinion.

Factual and Procedural History

Mother and Father married and had two children; J.L. and A.L. Mother and Father divorced in 2008. The judgment and dissolution decree awarded Mother and Father joint legal and physical custody of J.L and A.L. The original judgment was modified in 2011 (the "2011 Modification") to implement a new parenting plan. The 2011 Modification awarded Father Tuesday overnights and every other weekend from Friday evening until Monday morning during the school year. During the summer months, Father was awarded five weeks of custody. Pursuant to the 2011 Modification, Father was ordered to pay maintenance and $1011.00 per month in child support for the two children. Father was also required to maintain health insurance covering the children and to pay seventy-five percent of the children's uninsured expenses.

Father filed a motion seeking family access in December 2015 in which he alleged Mother intentionally failed to comply with the 2011 Modification by denying him visitation over the last two years. In February 2016, Father additionally filed a motion for contempt and to abate child support. In that motion, Father asserted that Mother failed to comply with the 2011 Modification concerning Father's visitation rights and failed to communicate with Father despite the fact that Mother and Father shared joint legal and physical custody.

2

In June 2016, Mother moved to modify custody, visitation, support, and maintenance as well as to determine amounts due and owing. Mother alleged that Father failed to exercise visitation under the 2011 Modification, the minor children no longer wished to visit with Father due to the deterioration of their relationship, and Father alienated himself from the children. Mother also claimed severe financial hardship due to Father's failure to pay expenses as ordered, an increase in costs associated with the care of A.L., and a decrease in her income. Mother further asserted that Father received a substantial increase in income. Father responded with a series of motions including a counter-motion to modify custody, visitation, support, and maintenance.

The matter was heard during May 2017. At the time of trial, J.L. was seventeen years old and A.L. was fourteen years old. Neither child testified at trial. Father testified that J.L. was completing her junior year in high school, and that J.L. was very smart and did "fairly well" in school, even though, in his opinion, J.L. was not living up to her potential. Father also testified that Mother denied him visitation with both children; however, Father only sought make-up visitation with A.L. because of J.L.'s age and his deteriorated relationship with J.L. Father proposed an even-split schedule with A.L., which included overnight visitations. Mother countered that Father should not be allowed overnight make-up credit because the children refused to spend overnights with Father.

Following trial, Mother, Father, and the GAL each submitted proposed parenting plans. The GAL recommended that the best interest of A.L. would be served by awarding joint legal and physical custody and by designating Mother as the residential parent. The GAL advised that A.L. not be allowed to decide custody on her own, but that the parents should enforce the parenting plan. The GAL expressed no safety concerns with Father and proposed awarding

3

Father custody that included every other weekend and one night per week. Father, A.L., and A.L.'s counselor would determine the overnights.

In December 2017, the trial court entered judgment (the "2017 Judgment"), granting Father's counter-motion to modify the 2011 Modification. The trial court determined that several substantial changes in circumstances had occurred, namely: (1) Father only received twelve overnight visits with A.L. from April 2014 through June 2015, (2) A.L. had not participated in visitation with Father from July 2015 to time of the trial, (3) Mother refused to facilitate a relationship with Father, and (4) Mother alienated A.L. from Father. The trial court found that Father's monthly income was $14,192.00 and Mother's monthly income was $3,732.00. The trial court decreased Father's child support and obligated Father to pay child support of $523.00 for only one child. The trial court awarded Father make-up visitation with A.L. and modified the 2011 Modification agreement in order to reflect the make-up visitation time with A.L. The trial court denied Father's motion for contempt. The trial court denied both Mother's and Father's requests for attorneys' fees, finding that both parties had the ability to pay their own fees and costs.

In response to the 2017 Judgment, Mother filed a motion for new trial and a motion to amend the 2017 Judgment on multiple grounds, including that the trial court failed to rely on the GAL's recommendation, did not allow the children to testify at trial, and did not order child support for J.L. In March 2018, the trial court entered the 2018 Final Judgment in which it denied both motions and sua sponte found that J.L. was statutorily emancipated because she turned eighteen years old after trial and before the 2017 Judgment was issued. Thus, the trial court clarified its reason for reducing Father's child support obligations to only A.L. in the

4

amount of $523.00. The trial court upheld all other provisions of the 2017 Judgment. Mother now appeals.

Points on Appeal

Mother raises three points on appeal. In Point One, Mother alleges that the emancipation of J.L. was not supported by the record because J.L. was in high school and only seventeen years old at the time of trial, and consequently, the trial court did not properly calculate child support. In Point Two, Mother argues two sub-points: first, Mother avers that the parenting plan was against the weight of the evidence because the trial court did not give weight to the GAL's proposed parenting plan; second, she contends that the trial court plainly erred in refusing to allow the minor children to testify. In Point Three, Mother posits that the trial court abused its discretion by not awarding her attorneys' fees because it failed to take into account the income disparity between Mother and Father.

Discussion

**I.     Rule 84.04 Deficiencies in Mother's Points Relied On**

The significant deficiencies of Mother's brief require us to first determine whether we should review the substance of Mother's claims. See Rule 84.04(d).[1] Mother's brief must:

(A)   Identify the trial court ruling or action that the appellant challenges;

(B)   State concisely the legal reasons for the appellant's claim of reversible error; and

(C)   Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

Rule 84.04(d)(1); King v. King, 548 S.W.3d 440, 442–43 (Mo. App. E.D. 2018).

The purpose of Rule 84.04(d) is to clarify the facts, issues, and arguments on appeal. Buckley v. Tipton, 270 S.W.3d 919, 922 (Mo. App. W.D. 2008). Adherence to the rule is

---

[1] All Rule references are to Mo. R. Civ. P. (2017).

required so that we do not improperly advocate for a party, waste judicial resources, or misinterpret what a party was arguing. Id.; Jones v. Buck, 400 S.W.3d 911, 914–15 (Mo. App. S.D. 2013) (internal citation omitted) ("The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts."). Grouping together "multiple, independent claims, of error rather than a single claim of error" is multifarious and violates Rule 84.04(d). Griffitts v. Old Republic Ins. Co., 550 S.W.3d 474, 478 n.6 (Mo. banc 2018) (internal citation omitted). "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." Id. (internal citation omitted). We are "under no obligation to review briefs which do not conform to the rules of procedure." Carden v. Mo. Intergovernmental Risk Mgmt. Ass'n, 258 S.W.3d 547, 557 (Mo. App. S.D. 2008). However, we have discretion to review a brief despite its deficiencies where meaningful appellate review is possible. King, 548 S.W.3d at 442. Indeed, we prefer to resolve an appeal on the merits of the case rather than dismissing for failure to comply with Rule 84.04. Maskill v. Cummins, 397 S.W.3d 27, 31 (Mo. App. W.D. 2013).

Here, Mother's Points Relied On are deficient in various respects. Mother's Point Two is characteristic of all three points on appeal. Mother states the following for Point Two:

> Parenting Plan as entered by the Court is plain error, and should be remanded to allow minor children to testify on their behalf, and for proper weight to be given to the recommendation of the GAL. Her Honor also issued instructions for "make-up" visitation for [Father] which [was] plain error, an abuse of discretion, and against the weight of evidence. The Judgment and Amended Judgment both fail to account for such a discrepancy between the Parenting Plan submitted by the Guardian Ad Litem, and the Ordered dates with any specificity. (Legal File documents 20 and 24). In addition, the amount of time ordered by the Court would have the practical effect of modifying custody from sole physical to [Mother], to at minimum joint physical between the parties with Father having the majority of the overnight visitation, while failing to cite a substantial and ongoing change in circumstances as set forth in Morgan v. Morgan, 497 S. W. 3d 359, 370 (Mo. App. E.D. 2016). Her Honor fails to cite changed circumstances which would make said modification in the best interest of the children specifically, while only laying out

6

the changes in circumstances she found. (Legal File Document 24 pg. 2, 6–7). Her Honor cites the statutory provisions for determining custody as set forth in RSMo 452.375.2, and states that the ongoing change was that the children exercised fewer visits with Respondent than what was ordered in 2014–15, none in 2015, that [Mother] interfered with visits, and that Mother alienated child from Father. (Legal File Document 20 pg. 8–9) Because the Court failed to allow the minor children to testify, or to give proper weight to the GAL's recommendation, the orders regarding custody and make-up time are thus plain error causing a manifest injustice, are clear abuse of discretion, and the case should be remanded for orders which are in the best interest of the minor children.

Each of Mother's three Points Relied On improperly raise factual arguments. See Rule 84.04(d); see King, 548 S.W.3d at 443. Additionally, Mother does not cite any legal reason to support her claim of reversible error. Rule 84.04(d)(1)(B); Jones, 400 S.W.3d at 915 (noting Rule 84.04(d) requires the appellant to concisely state the trial court ruling being challenged, the rule of law the trial court should have applied, and what evidence supports the appellant's suggested law). Merely labeling the trial court's ruling as error, without stating why the trial court's action constituted error, does not comply with Rule 84.04(d). Jones, 400 S.W.3d at 915 (internal citation omitted). Further, Mother's Points Relied On do not include any authorities on which she relies. See id. In her first Point Relied On, Mother mentions only one case upon which the trial court relied. Mother then explains her disagreement with the trial court's reliance on that case in an argumentative fashion and cites no legal authority to support her contention. See Rule 85.04(d)(5) ("Immediately following each 'Point Relied On,' the appellant . . . shall include a list of cases, not to exceed four, and the constitutional, statutory, and regulatory provisions or other authority upon which that party principally relies."). Each of Mother's Points Relied On present argumentative statements of facts interspersed with abstract statements of law that do not provide legal reasons to support the claims of reversible error. See King, 548 S.W.3d at 443; Jones, 400 S.W.3d at 916 ("A point that does not explain why the legal reasons support

7

the claim of reversible error merits dismissal."). Finally, Mother's Points Relied On are multifarious and preserve nothing for review. See Griffitts, 550 S.W.3d at 478 n.6.

Because the Points Relied On section does not strictly comply with Rule 84.04, we would be justified in dismissing Mother's claims. See King, 548 S.W.3d at 442; Jones, 400 S.W.3d at 916. However, we are able to discern Mother's arguments from her argument section and the remainder of her brief without expending the effort that would make us her advocate. For that reason, we gratuitously will exercise our discretion to review Mother's points on appeal. See Maskill, 397 S.W.3d at 31.

## II.     Point One—Emancipation and Child-Support Calculation

### A.     Standard of Review

We will reverse a trial court's decision to emancipate a child if it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); Morgan v. Morgan, 497 S.W.3d 359, 363 (Mo. App. E.D. 2016). "Substantial evidence means 'competent evidence from which the trial court could reasonably decide the case.'" T.S.I. v. A.L.(C.)B., 521 S.W.3d 317, 320 (Mo. App. E.D. 2017) (quoting Bauer v. Bauer, 38 S.W.3d 449, 455 (Mo. App. W.D. 2001)). We defer to the trial court's determinations of credibility and view evidence and inferences in the light most favorable to the judgment. Id. The trial court has broad discretion over child visitation in child-custody cases, and we give even more deference to those decisions. Id.; Morgan, 497 S.W.3d at 363. Even if the evidence could have supported another conclusion, we will not reweigh that evidence. T.S.I., 521 S.W.3d at 320–21.

8

B.    Analysis

Under Section 452.340.3(5),[2] a parent's obligation to make child support payments terminates when the child reaches the age of eighteen, unless the provisions of Section 452.340.4–5 are met. Section 452.340.4 authorizes support to a physically or mentally incapacitated child and thus is not applicable to this case. Section 452.340.5 makes clear that:

> [i]f when a child reaches age eighteen, the child is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue, if the child continues to attend and progresses toward completion of said program, until the child completes such program or reaches age twenty-one, whichever occurs first.

The party seeking to terminate child support bears the burden to prove facts supporting emancipation. Kay v. Keller, 462 S.W.3d 748, 753 (Mo. App. W.D. 2015) (internal citation omitted); Scruggs v. Scruggs, 161 S.W.3d 383, 392 (Mo. App. W.D. 2005) (internal citation omitted). Emancipation is accomplished in three ways: "(1) by express parental consent; (2) by implied parental consent; or (3) by a change in the child's status in the eyes of society." Wilkins v. Wilkins, 300 S.W.3d 594, 598 (Mo. App. E.D. 2009) (quoting Scruggs, 161 S.W.3d at 390). The third method of emancipation may be established if the child marries, enters the military, or voluntarily leaves the parent's home and has the ability to care for herself. Id. However, a child may not be deemed emancipated if the child remains enrolled in high school, unless the child reaches age twenty-one. Section 452.340.5; Denny v. Winton, 184 S.W.3d 110, 118 (Mo. App. S.D. 2006) (noting an eighteen year-old child attending high school is not emancipated). Alternatively, if the child has graduated from high school, she will not be deemed emancipated if she is enrolled in an institution of vocational or higher education by October following graduation and meets certain additional requirements. Section 452.340.5; Wilkins, 300 S.W.3d

---

[2] All statutory references are to RSMo (2016), unless otherwise indicated.

at 598 (noting a child will not be emancipated if the child is continuously enrolled in vocational school or college after high school if certain conditions are met).

As the party seeking the reduction in child support, Father had the burden of proving the required change in circumstance to support his request. Kay, 462 S.W.3d at 753; Scruggs, 161 S.W.3d at 392. The trial court created an ambiguous procedural posture because the record shows that Father did not seek a finding of emancipation for J.L. The record demonstrates that neither Mother nor Father expressly consented to emancipation of J.L., nor did they impliedly consent. See Randolph v. Randolph, 8 S.W.3d 160, 164 (Mo. App. W.D. 1999) (finding the parents had not expressly or impliedly consented to emancipating child who had moved out where the parents' actions showed they did not want the child to leave and provided some financial support). Instead, the trial court sua sponte made a finding of emancipation for J.L. only when it entered the 2018 Final Judgment.

We therefore consider whether sufficient facts are present in the record to support the trial court's statutory finding of emancipation. Wilkins, 300 S.W.3d at 598; Scruggs, 161 S.W.3d at 392–93 (finding the trial court erred in emancipating child where the record lacked competent evidence to support emancipation). J.L.'s age is not an issue because the record is clear that J.L. turned eighteen years old before the trial court issued the 2017 Judgment. The record shows that at the time of trial in 2017, J.L. was attending high school as a junior and was academically successful. The record lacks any further information regarding J.L.'s education. The record suggests that the trial court sua sponte found J.L. to be emancipated merely because she turned eighteen years old during the pendency of the proceedings. From the evidence adduced at trial, J.L. was a junior in high school in May 2017. Assuming J.L. continued her

education, she would have been a senior in high school when the 2018 Final Judgment was entered in March, 2018.

Curiously, the trial court noted that it found J.L. emancipated because neither Mother nor J.L. produced any evidence that J.L. was attending a school of secondary education to merit awarding child support. The trial court seemingly justified its finding of emancipation upon the absence of evidence that either Mother or J.L. notified Father that J.L. continued into her senior year of high school either before trial or after she turned eighteen years old following trial. See Beeler v. Beeler, 820 S.W.2d 657, 661 (Mo. App. W.D. 1991) (finding emancipation established where the child reached age eighteen prior to the hearing and was not attending high school).

The trial court's reliance on Beeler is misguided as the record contains no evidence that J.L. was not continuing to attend and progress toward completion of high school after she turned eighteen years old. See Denny, 184 S.W.3d at 118 (finding the trial court did not err in requiring the father to continue paying child support for eighteen year-old child progressing towards completion of high school). The trial court's fundamental error is that J.L. had no duty to notify Father that she was attending her final year of high school. Section 452.340.5 does not impose the duty of notification to the child-support obligated parent on children attending high school, but only on children who have graduated from a secondary school and are attending an institution of vocational or higher education. Section 452.340.5.[3] The record lacks any evidence that either condition has been satisfied. Further, logically, neither J.L. nor Mother could have been expected to present such evidence at trial because, during the trial, J.L. was only seventeen

---

[3] Upon reaching the age of 18, the parental support obligation continues if the child continues to attend and progresses toward completion of the secondary school program of instruction. A child's obligation to submit school transcripts or similar official documents substantiating the child's enrollment in order to remain eligible for child support payments applies only to the child's enrollment in institutions of vocational or higher education, not high school. Section 452.340.5.

11

years old and was attending her junior year of high school. Regardless of any assumption the trial court may have made, the statutory notice requirement of Section 452.340.5 simply did not apply and could not provide a legal basis for emancipation. See id.

We further note for future guidance to the trial court, that even had J.L. graduated high school after she turned eighteen years old, proof of her enrollment in post-secondary education still would not mandate a sua sponte finding of emancipation. See Wilkins, 300 S.W.3d at 600 (finding "non-compliance with the notice requirements of Section 452.340.5 does not result in emancipation"); see also Rogers v. Rogers, 87 S.W.3d 368, 373 (Mo. App. W.D. 2002) (failing to give a parent a college transcript does not by itself cause that child to be emancipated). Father could have asked for proof of J.L.'s continued enrollment in high school after J.L. turned eighteen years old if he had doubts as to whether she was continuing to attend high school. J.L. then could have been required to produce proof of enrollment or risk losing child support. See Section 452.340.5; Wilkins, 300 S.W.3d at 600. Father did not do so. The record is totally void of suggestion that Father offered evidence of J.L.'s emancipation so as to shift the burden of notification onto J.L. or Mother.

Because the record lacks any evidence that J.L. met the conditions for emancipation under Section 452.340.5, the trial court erred in sua sponte finding J.L. was emancipated. Section 452.340.3–5. The trial court's reduction of Father's child support obligation to J.L. was based solely upon its finding of emancipation. The record provides no other basis to modify Father's child support obligation to J.L. Because the trial court erred in sua sponte declaring J.L. emancipated, we remand this matter to the trial court with instructions to reinstate, retroactive to the date of its 2018 Final Judgment, Father's child support obligation to J.L. Point One is granted.

12

## III. Point Two—Parenting Plan

In her second point on appeal, Mother presents two distinct sub-points. These sub-points are deficient and difficult to ascertain, as previously referenced in our Rule 84.04 discussion. In particular, these sub-points suggest two different standards of review and are multifarious. See Griffitts, 550 S.W.3d at 478 n.6. However, given the straightforward nature of the legal issues presented, we elect to exercise our discretion to review Mother's two arguments. See Maskill, 397 S.W.3d at 31. First, Mother contends the parenting plan is against the weight of the evidence because the trial court gave little to no weight to the GAL's recommendations. Next, Mother alleges that trial court committed plain error by not allowing the children to testify as to why they did not wish to spend time with Father.

### A. GAL Recommendation

Mother maintains the trial court did not give weight to the GAL's parenting plan recommendations, thereby rendering its judgment against the weight of the evidence. Because this matter is a court tried case, we review Mother's claim under the Murphy v. Carron standard. T.S.I., 521 S.W.3d at 320 (citing Murphy, 536 S.W.2d at 32). We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy, 536 S.W.2d at 32. The trial court has broad discretion regarding parenting plans and child custody arrangements. Morgan, 497 S.W.3d at 363.

We use a great deal of caution when considering whether a child custody judgment should be reversed as against the weight of the evidence. Tienter v. Tienter, 482 S.W.3d 483, 489 (Mo. App. E.D. 2016). "The trial court has the *sole* responsibility for determining custody." Morgan, 497 S.W.3d at 373 n.8 (quoting In re Marriage of Harris, 446 S.W.3d 320, 330 (Mo.

App. S.D. 2014)).  Importantly, a GAL is not required to make a recommendation, and even where the GAL does make a recommendation, the trial court is not required to follow the opinion.  J.D. v. L.D., 478 S.W.3d 514, 518 (Mo. App. E.D. 2015) (citing In re Marriage of Harris, 446 S.W.3d at 330).  However, the GAL's input as to custody is valued because "a GAL's principal allegiance is to the court, and his function is to advocate what he believes to be the best interests of the child by providing the court requisite information bearing on those interests untainted by the parochial interests of the child's parents." J.D., 478 S.W.3d at 518 (internal quotation omitted).  "[P]ublic policy in Missouri [dictates] that frequent, continuing, and meaningful contact with both parents is in the best interest of the child and that any custody determination should further this policy." Beshers v. Beshers, 433 S.W.3d 498, 508 (Mo. App. S.D. 2014) (internal quotations omitted); see also Section 452.375.1(3) ("Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents[.]").

Here, the trial court found joint legal and physical custody to be in the best interests of A.L.  Mother, Father, and the GAL each proposed an arrangement of joint legal and physical custody for A.L.  The trial court varied from each of the proposed arrangements to provide Father make-up visitation.  See Beshers, 433 S.W.3d at 508 (noting that joint legal and physical custody does not require parenting time be equally divided).  The trial court was solely responsible for determining final custody of A.L.  See Morgan, 497 S.W.3d at 373 n.8 (quoting In re Marriage of Harris, 446 S.W.3d at 330).  The trial court was not compelled to follow the GAL's plan—or the plan of either parent.  See J.D., 478 S.W.3d at 518 (citing In re Marriage of Harris, 446 S.W.3d at 330).  Moreover, the record amply reflects that the trial court properly considered the relevant factors under Section 452.375.2 to determine the best interest of A.L.,

14

including but not limited to: the GAL's recommendations, A.L.'s need to have frequent and meaningful contact with Father, both Mother and Father having submitted joint parenting plans, and Mother having previously withheld visitation from Father. See Section 452.375.2 (listing factors to be considered when determining the best interests of the child); Morgan, 497 S.W.3d at 372 (internal citations omitted) (noting we may not reweigh the evidence and we may presume the trial court considered the statutory factors to determine the best interests of the child). Given the record before us, we are not persuaded that the trial court's modification of the parenting plan is against the weight of the evidence.

### B. Children's Testimony

As a second focus of her second point on appeal, Mother posits that both A.L. and J.L. should have been permitted to testify at the trial in order to make their wishes and parental preference known. Mother claims that, at a pre-trial conference, the trial court decided that the children would not be allowed to testify. Mother did not object to the trial court's decision not to have the children to testify. Mother contends that she had no opportunity to object to the trial court's decision because she made no formal motion requesting the children to testify on which the trial court could have ruled. Because Mother did not preserve for appeal her objection to the trial court's decision to not have the children testify, she requests plain-error review. See Lindsey v. Lindsey, 336 S.W.3d 487, 492 (Mo. App. E.D. 2011) (internal citations omitted) (noting that despite an appellant's failure to preserve an issue for appeal, we may review for plain error under Rule 84.13(c)).

"We will reverse for plain error in civil cases only in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." Rouse v. Cuvelier, 363 S.W.3d 406, 418

15

(Mo. App. W.D. 2012) (internal quotation omitted). In applying the two-step plain-error standard, we must first determine whether the trial court facially committed plain error affecting the appellant's substantial rights. J.D., 478 S.W.3d at 518; Bedwell v. Bedwell, 51 S.W.3d 39, 43 (Mo. App. W.D. 2001). Plain error means error that is "evident, obvious and clear[.]" Bedwell, 51 S.W.3d at 43. If we find plain error, then we determine whether the error resulted in manifest injustice or a miscarriage of justice. J.D., 478 S.W.3d at 518.

"[A] trial court has discretion over whether to allow children to testify as to their custodial preference." Prach v. Westberg, 455 S.W.3d 513, 519 (Mo. App. W.D. 2015) (internal citation omitted) (upholding the trial court's refusal to let the children testify based on the best interests of the children). In exercising this discretion, a trial court considers the best interests of the child as well as other evidentiary issues, such as the probative value of the child's testimony. See Moyers v. Lindenbusch, 530 S.W.3d 646, 655 (Mo. App. W.D. 2017) (noting custodial preferences are one of many factors a trial court considers in a modification proceeding).

The record reflects that the trial court heard from Mother about the children's troubled relationship with Father, thus indicating the children's preference. See Prach, 455 S.W.3d at 519. Father's decision not to seek make-up visitation with J.L. due to the deterioration of their relationship also was presented to the trial court. The trial court was made aware of the acrimony between Father and the children. Any testimony from the children regarding their parental preferences would have been merely cumulative. See D.S.P. v. R.E.P., 800 S.W.2d 766, 771 (Mo. App. E.D. 1990) (finding the trial court in a dissolution case did not err in excluding what would have been only cumulative testimony from mother regarding children's happiness). The trial court's parenting plan permitted Father make-up visitation and also allowed Mother significant time with A.L. Once the make-up visitation was completed, the trial court reverted to

16

the prior parenting schedule. Further, the GAL interviewed A.L. and represented A.L.'s interests at trial; the GAL testified that she had no safety concerns should Father be allowed increased custody. See Lindsey, 336 S.W.3d at 493 (recognizing that a GAL serves as the legal representative of the child, makes the wishes of the child known, and is duty-bound to protect the best interests of the child). The GAL further recommended that A.L. not be allowed to determine custody, but that the parents should enforce the visitation schedule. Nothing in the record indicates that the trial court failed to consider A.L.'s wishes. See T.S.I., 521 S.W.3d at 320 (noting a trial court has broad discretion in child visitation cases); Prach, 455 S.W.3d at 519.

Mother has not shown that the trial court committed any error, much less plain error, in declining to allow the children testify at trial. See J.D., 478 S.W.3d at 518; Lindsey, 336 S.W.3d at 493. Finding no error, plain or otherwise, we deny Point Two.

## IV.    Point Three—Attorneys' Fees

In her final point on appeal, Mother argues that the trial court erred in refusing to award her attorneys' fees because Father had a greater annual income and was responsible for the greater portion of litigation.

### A.    Standard of Review

A trial court has wide discretion to award attorneys' fees. Parciak v. Parciak, 553 S.W.3d 446, 455 (Mo. App. E.D. 2018). Thus, our review of an award of attorneys' fees is limited to an abuse of the trial court's considerable discretion. Id. We presume the trial court's ruling with respect to attorneys' fees is correct. Courtney v. Courtney, 550 S.W.3d 522, 531 (Mo. App. E.D. 2017); Morgan, 497 S.W.3d at 378 (internal citation omitted). In order to show abuse of discretion, the party challenging the trial court's decision regarding attorneys' fees has the burden of showing that the trial court's judgment "is clearly against the logic of the

17

circumstances and so arbitrary and unreasonable as to shock one's sense of justice." Parciak, 533 S.W.3d at 455 (internal citation omitted).

B.    Analysis

Parties in domestic relations cases are generally responsible for paying their own attorneys' fees. Morgan, 497 S.W.3d at 378. However, the trial court may award attorneys' fees in modifications to dissolution proceedings under Section 452.355.1, which provides:

> [u]nless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party . . . and for attorneys' fees[.]

While Section 452.355.1 permits the trial court to award attorneys' fees, the statute does not require or compel an award. Davis v. Schmidt, 210 S.W.3d 494, 512 (Mo. App. W.D. 2007). The party seeking attorneys' fees must prove entitlement to such an award. Morgan, 497 S.W.3d at 378. The fact that one party's income exceeds the other party's income does not compel the trial court to award attorneys' fees. Parciak, 533 S.W.3d at 456 (finding significant income disparity did not entitle the wife to attorneys' fees under the abuse-of-discretion standard); Courtney, 550 S.W.3d at 532; Adams v. Adams, 51 S.W.3d 541, 549 (Mo. App. W.D. 2001) (internal citation omitted) ("[T]he fact that [h]usband's income exceeds [w]ife's, standing alone, does not compel an award of attorney fees."). Indeed, income disparity is but one of the relevant factors for the trial court to consider; a trial court also considers the other Section 452.355.1 factors—the merits of the case and party actions causing attorneys' fees. Morgan, 497 S.W.3d at 378 (upholding the trial court's award not on the basis of income disparity but on the merits of the case and party actions). "[A]n award of attorney[s'] fees under [S]ection 452.355.1 represents the exception, rather than the rule." Id. (quoting Davis, 210 S.W.3d at 512).

Here, the record shows that the trial court considered all factors and credible evidence in declining to award attorneys' fees to either Father or Mother. Specifically, the trial court acknowledged the income disparity between Father and Mother, noting that Father's income was almost four times Mother's income. See Parciak, 533 S.W.3d at 456; Courtney, 550 S.W.3d at 532 (finding income disparity alone supports but does not compel award of attorneys' fees). However, the trial court also found both parties had the ability to pay their own costs and fees. Additionally, the trial court awarded Father make-up visitation and modified the child-custody arrangement in his favor, demonstrating that the trial court found Father presented a meritorious case. See Morgan, 497 S.W.3d at 370–80 (finding the trial court's determination that the father presented a meritorious case supported his attorneys' fees award under Section 452.355.1). Although Father presented a meritorious case, the trial court was well within its discretion to decline to award fees to either parent. See Siegfried v. Remaklus, 95 S.W.3d 107, 115 (Mo. App. E.D. 2001) (upholding the trial court's refusal to award attorneys' fees to either party where mother instituted the proceedings, mother had the ability to pay, and father was the prevailing party). Further, the record shows that both parties contributed to the litigation expenses by filing multiple motions. See Morgan, 497 S.W.3d at 380 (internal citations omitted) (recognizing that a trial court may consider domestic litigants' actions in bringing motions and increasing fees when deciding whether to award attorneys' fees); see also Adams, 51 S.W.3d at 549 (upholding the trial court's refusal to award attorneys' fees to mother despite finding an award could have been supported by husband's greater income and the fact that husband necessitated the action by failing to pay court-ordered maintenance). Holistically viewing the Section 452.355.1 factors, Mother's argument that the trial court abused its discretion in refusing to award her attorneys'

fees is unavailing.  The trial court properly exercised its discretion in its decision to deny an award of attorney's fees to either party.  See Parciak, 553 S.W.3d at 455.

We find that the trial court did not abuse its discretion in deciding that Mother and Father should each pay for their own attorneys' fees.  Point Three is denied.

Conclusion

We reverse the judgment and remand Point One with instructions for the trial court to enter a new judgment providing child support for J.L. consistent with this opinion.  We affirm the judgment of the trial court on Points Two and Three.

_____
KURT S. ODENWALD, Presiding Judge

Gary M. Gaertner, Jr., J., concurs.
Colleen Dolan, J., concurs.

20